## Barth v. Barth.

4-6720                                      161 S. W. 2d 393

Opinion delivered April 27, 1942.

*Doran, Doran & Doran* and *Shouse & Shouse,* for appellant.

*C. T. Bloodworth,* for appellee.

GRIFFIN SMITH, C. J. The appeal is from the court's action in declining to vacate a divorce decree granted Paul M. Barth, a dentist serving in the army with the rank of major. His complaint of July 7, 1941, bore fruit September 1. The wife, Gayle, was informed by her husband's father, through her daughter, that a divorce had been granted. She promptly moved, as she contended, to protect rights that had been destroyed by a court having, *prima facie,* jurisdiction of the parties, but in fact being without power to render the decree because of the major's fraudulent conduct.

Gayle and Paul, citizens of Iowa, were married in 1917. Wyllis Glee, an only child, was nineteen years of age in 1941.

Testifying in opposition to the motion, Major Barth asserted that he had been separated from Gayle since June, 1936, and cohabitation between them had not been reëstablished. The court asked what caused separation, to which there was the response: "We just couldn't get along. I will take half of the blame."[1]

In June, 1939, Major Barth endeavored to procure a divorce in Polk county, Iowa. His wife, then living at Boone, answered and cross-complained. She alleged her mate's misconduct, consisting in the main of perilous proclivities for Polly Powell, whose propensities for paramours entailed substantial and continuous contributions. Professionally, Polly was a strip-tease dancer. Whether the lady's finesse in disrobing had the effect, constructively or actually, of alienating Paul from his own fireside, or whether artistic dancing filled his soul with memories of King David, is not as satisfactorily revealed as was Polly's shapely form.

Be this as it may, the Major quite suddenly developed an appreciation of the aesthetic—musical or otherwise—

---

[1] This testimony was given in the trial which resulted in a decree of divorce, and not in the hearing to set the decree aside.

and followed the apparition to Des Moines, where Polly's professional business required her physical presence. Thereafter matrimonial sedition seethed. It was difficult for Mrs. Barth to believe that "the good girl" Paul represented Polly to be could appear on the public stage in rakish costume for introductory purposes, and then, without violation of modesty's mandates, bid garment by garment a gentle adieu while remaining insensible to Apollo's prototype symbolized by an erring family man who mentally measured distance and longed to participate in vociferous applause.

The Iowa court, on agreement of the parties, gave judgment for separate maintenance and dismissed the Major's complaint. Appellee returned to his assignment at Fort Leonard Wood, Missouri, 175 miles distant from Harrison. Payments were made until the Arkansas decree was procured. Thereafter he sent money to the daughter.

It is denied that appellee's residence here was *bona fide*. His testimony on this issue is substantially as follows:

Having been sent to Fort Wood, (May 1, 1941) Barth was directed to report at Camp Robinson for manœuvres, which continued until August 11 or 12. Appellee became ill and spent two days in a hospital. Military manœuvres were conducted at Camp Robinson; also in South Arkansas, and in Louisiana. After being assigned to Fort Wood, appellee voluntarily came to this state "from a little town near Poplar Bluff." From the hospital "somewhere in Louisiana" appellee returned to Camp Robinson, remaining ten days from September 17. He then returned to Fort Wood, where he had been stationed until time of trial, and where, with the exception of a 14-day leave, he remained.

Major Barth testified he selected Harrison as a home "because I expected to start practicing as a dentist if I got out of the service within the next year." The residence, appellee said, was established May 15, 1941. When not on army duty, spare time was spent "in or about Harrison." The day of trial appellee went from Little

Rock to Harrison and remained from Tuesday night until Friday noon. Although the record at one place shows that appellee "established" his residence at Harrison May 15, at another place May 5 is given, "and I am very sure I was here two times before that."

During May appellee engaged a room because he wanted to establish a residence "for the purpose of divorce." He did not remain all night, but paid a month's rent and left a suit of clothes. Second and third trips were made during May, the visitor remaining over night. He did not know the hotel proprietor's name, nor was he acquainted with the mayor, any county official, the postmaster, or anyone else. When asked regarding frequency of visits during June, appellee replied: "I will tell you the honest truth: I would bring Major Cottrell to his place and then I would come down here and stay all night." Such trips were made "two or three times" in June. Appellee was in Harrison "two or three times" in July, and on one of these occasions probably spent three hours. Being on manœuvres during August, he was unable to spend much time in the rented room, but did patronize it overnight.

Residence in good faith for sixty days before filing suit, and ninety days before a decree may be issued, are statutory requirements.[2] In *Squire v. Squire,* 186 Ark. 511, 54 S. W. 2d 281, the appellant admitted she came to Arkansas to obtain a divorce, intending to remain if she could secure employment. It was held that "even though [one moved] to this state to bring a divorce suit and had the intention of leaving after the divorce was granted, this would not deprive the court of jurisdiction." It was then added that the residence must be actual, and acquired in good faith.

The holding in *Hillman v. Hillman,* 200 Ark. 340, 138 S. W. 2d 1051, is that a plaintiff seeking divorce may file his or her complaint in the chancery court of the county of such plaintiff's residence, but residence must not be colorable, nor may the venue be sought as a mere pretext.

[2] Pope's Digest, § 4386. [For statutory provision regulating acquirement of domicile, see Act 355, approved March 26, 1941.]

In commenting upon § 1618 of Sandels & Hill's Digest, Mr. Justice HUGHES, after saying that meaning of the statute might have been made plainer by particularity in the use of language, was of opinion that "it is easily understood by anyone who does not want to misunderstand, and the court has no difficulty in determining what it means." *Furth* v. *State*, 72 Ark. 161, 78 S. W. 759. So, here, the court has no difficulty in finding that the legislature did not intend to extend facilities of the state's divorce courts to a nonresident who paid a month's room rent, deposited a suit of clothes, and almost immediately returned to army headquarters where his presence was required. That he made a few trips from Little Rock to Harrison for the admitted purpose of qualifying under § 4386 of Pope's Digest is of but slight importance in view of his status as an officer of the armed forces.

Testimony relating to appellee's conduct toward his wife was not improperly admitted. It tended to explain why the particular forum was selected.

The decree is reversed. Directions are that the order of divorce be vacated.

McHANEY, J., (concurring). The only question presented by this appeal is whether appellee had been a *bona fide* resident of this state for ninety days within the meaning of our divorce statute when the divorce was granted him. I agree that he had not. It is undisputed that he and appellant had lived separate and apart for more than three years, and that he would be entitled to obtain a divorce in this state on that ground, if he had established a *bona fide* residence here sufficient to give the court jurisdiction, and we all agree that he had not.

My objection to the opinion of the majority is that it reflects upon appellee, who is a major in the armed forces of the United States, when it is wholly unnecessary to a decision of his case to do so. The critical and flamboyant language concerning his previous conduct is wholly beside the point, is *obiter dicta*, and serves no useful purpose in a decision of the question of his residence. Whatever his previous conduct may have been, whether good or bad, does not disentitle him to a divorce under our three-year separation statute, if he is a resident of

this state. I do not think it is the province of this court to criticize and castigate a litigant in this court when it is not necessary to do so in the opinion, even though the evidence may support such criticism.

I, therefore, concur in the opinion of the majority holding appellee had not established a residence in this state. I am authorized to say Mr. Justice HOLT and Mr. Justice GREENHAW concur also.