FRANKS *v.* FRANKS.

4-8214                                                                  204 S. W. 2d 90

Opinion delivered June 23, 1947.

*W. F. Denman* and *Tom W. Campbell,* for appellant.

*J. N. Saye* and *Graves & Graves,* for appellee.

McHANEY, Justice. Appellee brought this action for divorce against appellant on February 27, 1946, on the grounds of habitual drunkenness and cruel and inhuman treatment, general indignities, and for the custody of their then six year old girl child and for property rights as claimed in her complaint. She alleged that she and appellant were married September 7, 1938, and lived together as husband and wife until February 18, 1946, when she left because of his mistreatment of her, during which time she made appellant a good wife and gave him no cause to mistreat her. On motion of appellant, the indignities mentioned in her complaint were made more definite and certain by an amendment which alleged that they consisted in part by his staying away from home all or part of the night, drinking and gambling, nearly every week, leaving her and the little girl alone using profane language, in their presence, and personal violence to her on two occasions.

The answer was a general denial. He alleged that she had left him on three previous occasions, without cause, and that her leaving him on February 16, 1946, was again without cause. He prayed that her complaint be dismissed for want of equity, but in the alternative if a divorce be granted her, he be given the custody of said child.

Trial was had before the court on June 25 and 26, 1946, and a number of witnesses for each party testified orally, at the conclusion of which the court took the matter under advisement and continued the case to September 10, 1946, but ordered appellant to pay to appellee $150 on or before July 5, August 5, and September 5, for the support and maintenance of appellee and their daughter whose temporary custody had previously been awarded her with certain exceptions. On September 17,

after hearing further oral testimony, the court granted appellee a divorce from appellant, also the custody of said child for nine months of each year, with the right of visitation by him, granted appellant her custody for the months of June, July and August of each year, with the right of visitation by her, and ordered him to pay appellee $60 per month for the support, education and maintenance of said child during the nine months appellee had her care and custody. He was further ordered to pay appellee's attorneys $300 additional for their services in the Chancery court and $150 more, in the event of an appeal to this court; to deliver to appellee a certain Chevrolet automobile which he had theretofore given to her as a birthday present and which he had repossessed without her knowledge or consent, and one-third of all household goods and furniture. The decree provided that no further alimony or monthly allowance should be awarded appellee for her support. The cause was continued as to the property rights as between appellant and appellee, and as to the rights of property, claimed by appellant's father, J. W. Franks, who intervened in the action, claiming certain interests in property said to belong to appellant who was enjoined from disposing of any of his property.

Appellant has appealed from so much of this decree as gives appellee a divorce from him. Appellee has taken a cross-appeal from the refusal of the court to grant her temporary alimony pending adjudication of the property rights between her and appellant.

For a reversal of this decree on the direct appeal, appellant makes three contentions: 1. Because appellee's evidence is not sufficiently corroborated; 2. because of her own misconduct; and 3. because she condoned his misconduct.

1. We cannot agree that appellee's evidence is not sufficiently corroborated. While the court did not base the decree on the ground of habitual drunkenness, but on the ground of indignities and mistreatment, we think her evidence that such indignities and misconduct to-

922

ward her frequently followed his excessive drinking and all night gambling parties indulged in by him weekly or oftener was sufficiently corroborated. There is no suggestion here of collusion between the parties, and it is not contended that her testimony, if corroborated, is not sufficient. She reviewed their married life since 1938 and testified to many matters of mistreatment, including some personal violence. We do not review this evidence in detail, as to do so would serve no useful purpose. But we think some of the incidents related by her were corroborated sufficiently to justify the court in treating the whole of her testimony as to such mistreatment as being fully corroborated. In *Goodlet* v. *Goodlet,* 206 Ark. 1048, 178 SW. 2d 666, we quoted from an annotation in 65 A.L.R. 169, which says: "In cases of cruelty or other mistreatment, there is a tendency to hold that independent proof of conduct of the defendant of the sort complained of, at least where more than one instance of it is established, is sufficient corroboration of the whole of plaintiff's testimony as to mistreatment." It was there further said: "The cases are agreed that the purpose of the rule requiring corroboration is to prevent procuring divorces through collusion, and that where it is plain there is no collusion, the corroboration may be comparatively slight." So, we conclude the corroboration was sufficient to justify the decree. This is true without taking into consideration appellant's conduct subsequent to the beginning of the action relating to the custody of the child, the automobile which he clandestinely took from her and other matters. See *Greer* v. *Greer,* 193 Ark. 301, 99 S. W. 2d 248.

2. As to appellee's misconduct, the argument is largely based on a finding made by the court that: "Both of them have done things that should not have been done and neither of them was free from blame for their troubles, but upon the whole case, the court is of the opinion that the indignities caused by the defendant were such that would entitle the plaintiff to a divorce, especially since it has been very clearly proven to the court that a reconciliation is impossible." Counsel for appellant

have cited a number of our own cases, and others, to the effect that divorce is a remedy provided for an innocent party, except as otherwise provided by Statute, including our recent case of *Widders* v. *Widders,* 207 Ark. 596, 182 S. W. 2d 209. But this Widders case, as we think the others so holding, refers to conduct of the complaining party which caused the mistreatment of the plaintiff by the defendant, or of conduct by plaintiff that would be a ground of divorce by the defendant. In using the language above quoted, the court did not make any finding that appellee had been guilty of any indignities to appellant and none are claimed by him, and the court, no doubt, had reference to the fact, freely admitted by her, that she had on social occasions partaken of intoxicants in small quantities with her husband and others, but never to excess, and that she had played cards for small stakes, such as penny ante poker.

We agree with the trial court that this kind of conduct should not have been indulged in by either of them, especially by appellee. The playing of cards or dice for money is gambling and is made unlawful by statute. No doubt the court thought, as we do, that appellee, being under the dominating influence of appellant, engaged therein because he had desired her to do so. He taught her to play poker and shoot dice, and it appears that her drinking began with the night of their marriage in 1938, under his influence. We think the court was warranted in finding that appellee's indiscretions and misdeeds in these respects were not sufficient to justify a denial of the decree, and that the rule relied on by appellant, stated in the Widders Case, and a number of others cited, is not here violated.

3. The final reason urged for a reversal of the decree by appellant is condonation by appellee. This contention is based on the fact that, just before Christmas, 1944, she left him on account of his cruel treatment and indignities. She returned to him on January 1, 1945, upon his promise that he would not mistreat her again, and that he would quit drinking, gambling, and staying away from home at night. Upon her return they again

resumed their marriage relationship and co-habited as husband and wife, under said promise. For a time, about two months, he kept his promises, but then relapsed into his old habits and she says, for the remainder of 1945, his conduct was worse than it had been before. She went away again about Christmas, 1945, and again returned to him on similar promises of good behavior, which he kept until February 16, 1946, when she testified he told her he would not be further bound by his promises, and that if she thought he was going to live as he had for the last few weeks, she was crazy, and that he stayed out the next night and she left him. She testified she did not quit him at Christmas, 1945, but, if we assume she had that intention when she left, she returned under the same promise of reformation. Assuming, without deciding that her acts in returning and resuming the marital relation, based on his promises not to repeat the offense, constituted condonation for past mistreatment, still it was only conditional condonation. If the condition is broken by future misconduct, condoned past conduct may then be relied on in support of an action for divorce on the subsequent misconduct or both. In *Longinotti* v. *Longinotti,* 169 Ark. 1001, 277 S. W. 41, we said: ''The law is well settled that either spouse may condone conduct of the other which, but for the condonation, would entitle the innocent spouse to a divorce. But it is equally as well settled that condonation does not deprive the aggrieved spouse of the right to a divorce on account of the subsequent misconduct of the offending spouse. On the contrary, subsequent misconduct will generally operate to revive the right to a divorce for the condoned offense.'' See, also, *Denison* v. *Denison,* 189 Ark. 239, 71 S. W. 2d 1055, where it was said that ''the doctrine of condonation has no application to the facts of this case,'' which were that the parties continued to cohabit as man and wife after the more violent outbreaks of temper on the part of the wife. We conclude that the doctrine of condonation has no application here.

As to the cross-appeal of appellee, claiming the court erred in refusing to award temporary alimony to her for

her support and maintenance from September 17, 1946, the date of the decree, until final determination of the property rights between the parties, but little need be said. The court did order appellant to pay $60 per month for the support, maintenance and education of their child during the nine months in each year she is in appellee's custody. In addition, appellee has been paid for herself and the child $75 from May 23 to the first Monday in June, 1946, and $450 subsequently ordered. Appellee is employed and draws a salary from such employment. We do not feel justified in granting the relief prayed, in view of the trial court's refusal to make an allowance, pending final determination of the property rights.

The decree is accordingly affirmed, on both the direct and cross-appeal.

McFADDIN, J. not participating.