SWANSON *v.* SWANSON.

4-8255                                              206 S. W. 2d 169

Opinion delivered December 1, 1947.

*Kenneth C. Coffelt* and *J. B. Underwood,* for appellant.

*Mallory, Rasmussen & Johnson,* for appellee.

ED. F. McFADDIN, Justice. This is a divorce suit; and the decree of the chancery court must be reversed, and the cause dismissed under the authority of *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585. In that case we held that a plaintiff must be a *bona fide* resident of Arkansas, and have the *animus manendi*—that is, he must be domiciled here—before he can invoke the jurisdiction of the courts of this State to obtain a divorce. The proof in the case at bar falls short of this residential requirement.

Joseph Swanson (appellee) and. Maudie Swanson (appellant) were married in Oklahoma in 1925. They have continued to live in Oklahoma, except when Joseph Swanson came to Arkansas in August, 1945, which trip will be discussed presently. The parties lived together as husband and wife from 1925 until shortly prior to September, 1939, when Maudie Swanson filed—in Osage county, Oklahoma—a petition for separate maintenance. Joseph Swanson, by cross complaint in that case, sought a divorce on the grounds of indignities; but the divorce was denied him, and separate maintenance was awarded

Maudie Swanson for herself and the two children born of the marriage. After the denial of his prayer for divorce, Joseph Swanson wrote his wife a letter, which read:

"Jan. 15, 1943

"Maudie Swanson
"908 No. Cincinnati
"Tulsa, Oklahoma
"Maudie:

"It is very foolish to go on as we have for the past several years. Now, that I have a job I would agree to a reasonable settlement. If you won't agree to some kind of reasonable terms. I'll just go, ahead as I have always planned and save enough money to get a divorce from another state. I am going to divorce you if it is the last thing I ever do. I hope you can see things clearer than you have in the past and we can get this settled which will be much better for us all.

"Yours truly,
"J. N. Swanson."

In 1944, Joseph Swanson filed a suit for divorce in Osage county, Oklahoma, claiming indignities and other grounds. Whether this suit is still pending is a disputed question; but the answer is immaterial to our decision here. At all events, no divorce decree was obtained by Joseph Swanson in that case. On August 13, 1945, he came to Hot Springs, Arkansas; and, at an undisclosed date in November, 1945, filed suit for divorce in Garland county, Arkansas, but took a voluntary nonsuit on December 12, 1945.*

Then, on April 8, 1946, Joseph Swanson filed the present divorce suit in Garland county, alleging as grounds, three-years separation and also indignities (*i. e.*, the 5th and 7th grounds of § 4381, Pope's Digest, as amended). The evidence is voluminous, and not very complimentary to either party; but there is no occasion for us to detail any of it here, except the meager portion

---

* That was case No. 19780 in the Garland Chancery Court. All the pleadings in that case are not brought into the present record; but the record here does show a motion filed in that case, and also shows that Joseph Swanson was cross-examined in this suit about that case.

now to be quoted, that bears on the issue of whether Joseph Swanson ever became a *bona fide* resident of Arkansas within the rule announced in the case of *Cassen* v. *Cassen, supra.*

On May 15, 1946, Joseph Swanson stated in his deposition: ''Q. How long have you continuously lived and resided here in Hot Springs, Arkansas, with Mr. Struble? A. Since August 14, 1945, up to this date.''

At the hearing before the court on October 15, 1946, Joseph Swanson was cross-examined about the letter he wrote to Maudie Swanson, as previously copied; and the following questions and answers appear:

''Q. What did you come to Arkansas for? A. I moved to Arkansas. Q. For what purpose? A. To live here, and I wanted to get a divorce, too. Q. You came here for the purpose of getting a divorce? A. Not exactly; I told you I moved here. But I would like to have a divorce, too. Q. You, of course, knew when you came over here about the three-year statute in this state? Did you know about that? A. Yes, I believe I did.

. . . . .

''Q. I say you knew about it when you moved over here. A. Yes, I knew about it. Q. If these allegations of indignities are true and the proof of them are true, why didn't you establish that fact in your Oklahoma court over there where you people have always lived? A. That is something up to the lawyers; I don't know. They fooled around with it for a year. Q. What did they 'fool around with it' for? A. I don't know; I know I got hold of my lawyer and told him if he couldn't get something done, to stop it. Q. Did you try to get the case set down? A. Yes, and then he moved to Nevada and I told him to drop the case. Q. That was the last case? A. Yes.''

Joseph Swanson was corroborated on the fact of his actual presence in Arkansas; but such actual presence is far from the *animus manendi* of remaining in Arkansas and becoming domiciled here. This he did not show. Rather, when we consider: (1) his two previous unsuc-

cessful efforts in Oklahoma to obtain a divorce; (2) his letter to his wife announcing that he would get a divorce in "another state"; (3) his previous divorce suit in Garland county; and (4) his own admission that he came to Arkansas "to live here, and I wanted to get a divorce, too"—when we consider all these facts, coupled with his absolute failure to testify or offer any evidence of any *bona fide* intention to make Arkansas his domicile—we reach the conclusion that Joseph Swanson came here to get a divorce, and not to make Arkansas his domicile. Therefore, under the rule of the Cassen case the Garland Chancery Court erred in awarding a divorce to Joseph Swanson.

The divorce decree was granted by the chancery court on November 19, 1946; and the opinion in *Cassen* v. *Cassen, supra,* was not delivered by this court until April 28, 1947. Nevertheless, when *Cassen* v. *Cassen* overruled the holding in *Squire* v. *Squire,*\* the effect was the same as if the Squire case had never been the law. See *Carter Oil Co.* v. *Weil,* 209 Ark. 653, 192 S. W. 2d 215. Therefore the decree of the Garland Chancery Court is reversed, and the cause is dismissed.

There have been various applications for suit money, court costs, maintenance and attorney fees. The trial court at one time awarded Maudie Swanson $150 attorney fees and $50 suit money; and, later, allowed $100 as additional attorney fees. Under our order Joseph Swanson has paid $110 on the costs in this court. We now order him to pay the balance of all unpaid costs in both courts. After reviewing the entire record, we deny Maudie Swanson any further or additional attorney fees; and we also set aside all orders in this case made by the Garland Chancery Court concerning prospective payments for support or alimony. While the Arkansas courts have jurisdiction, in a case such as this, to award separate maintenance, nevertheless, we think justice will best be served by remitting these parties to the courts of Oklahoma—the State of their domicile, as disclosed by this record—for any support money and maintenance orders.

\* 186 Ark. 511, 54 S. W. 2d 281.

443

Previous orders for separate maintenance have been made there.

Reversed and dismissed.

McHANEY, J., dissents.