WILDE *v.* WILDE.

4-8940    222 S. W. 2d 814

Opinion delivered July 4, 1949.

*Herman Spears,* for appellant.

*Davis & Davis,* for appellee.

GRIFFIN SMITH, Chief Justice. A decree of divorce was granted Norbert J. Wilde in January of this year on the ground that his wife had wilfully deserted him. The determining question is whether the Arkansas Court had jurisdiction, Mrs. Wilde's contention being that the plaintiff was not a resident of West Memphis. In this respect we agree with the appellant.

Appellee, who in 1944 was a dentist, married appellant in Chicago in December, 1942. The couple lived together until September, 1944, and in October Dr. Wilde enlisted in the armed forces. He was sent overseas in 1945, returning in 1946. Letters written by him during the period of separation mentioned incompatibility. There was the suggestion of divorce. Upon his return to the United States, appellee joined his wife in Chicago,

and shortly thereafter received his discharge from the navy. He had concluded to study medicine, with the expectation of specializing in surgery. With this in view he went to Buffalo, N. Y., in July. Between May and July appellant and appellee occupied the same room, but according to the testimony of each they did not cohabit in the true matrimonial sense, the more intimate relationship having been discontinued in February or March, 1944. In September, 1946, appellee resigned his position in a Buffalo Hospital and went to Memphis, Tenn., where he entered a hospital to procure further training, at a salary of $275 per month.

March 11, 1947, Dr. Wilde, alleging his residence to be West Memphis, sued for divorce. The complaint was dismissed October 20th with a finding that the plaintiff's charges of indignities and desertion were not corroborated. In March, 1948, the suit resulting in this appeal was filed. In response to a motion to make the complaint more definite and certain, appellee asserted that separation without cohabitation had continued for more than three years. The final decree found that the plaintiff was entitled to a divorce on the ground of desertion.

The 1948 complaint alleged that "no children were born to this union, and there are no common property rights to be adjusted." Testimony revealed there was a young son. The mother's right to the child's custody was not questioned by appellee, and the child is not mentioned in the decree. Mrs. Wilde testified that, although during their separation her husband had not sent money for support of the boy, nor assisted her in any manner, yet in spite of his "generally belligerent, hostile, and arrogant attitude," she had never ceased to love him, and would gladly live with him if he would provide a home. The divorce was being contested "because I believe in the permanency of marriage, [and] I think perhaps sometime something will happen, [and] that we will be able to get back together."

Dr. Wilde laid upon his wife the entire blame for separation, contending that she was indifferent, non-

responsive, and had refused to go with him when his professional status required a change in abode. He undertook to have Mrs. Wilde join him in the purchase of a home in Memphis, but she found fault with the suggestion.

While relations of the parties have no controlling part in the determination of the appeal, they are mentioned to better understand the reasons given by Dr. Wilde for going to Memphis.

Dr. Wilde explained that he regarded West Memphis as a "coming" city—a place suitable for beginning his career as a surgeon. Bonds had been voted for a hospital, and in other respects the outlook was inviting. The Doctor paid a poll tax in Crittenden County for 1947. He procured a 1947 automobile license and renewed it in 1948. In December, 1946, he applied for permission to take the Arkansas medical examination, but was not permitted to do so because he had not been examined in the basic sciences. He took this examination in June, 1947, then renewed his application for a medical examination, but did not pursue the request. His assertion that for more than sixty days before filing the second suit, and for more than ninety days preceding the decree, he had been a resident of West Memphis, is based upon proof that in December, 1946, he rented a room at the home of Mrs. J. B. Bryant, who testified that the Doctor began living there in January of the following year. He spent "on an average" three or four nights a week in the quarters so procured. Counsel for appellant, in an effort to show that this conduct was colorable, procured from Mrs. Bryant on cross-examination an admission that Dr. Wilde did not have a trunk or suit case, and that his personal belongings consisted of clothing, such as coats, shoes, some shirts, and socks. He did have what would be called "a little weekend bag— . . . he just brought his suits there on coat hangers; and his shirts in a suit case, but carried the suit case away, and they are all in my closet and dresser drawers. He left in June, 1948, taking some of his personal belongings with him, but leaving three suits, some shoes, and some underwear."

Appellant, in her answer of June 21, 1948, asserted that the plaintiff had left Memphis, Tenn., and had gone to California. The allegation that Dr. Wilde went to California was not denied, but when the case was orally argued it was insisted that the trip was in furtherance of his professional status, and that his stay was temporary.

There was testimony that the Kennedy Hospital in Memphis, where Dr. Wilde was an intern, provided living quarters for unmarried staff employes. A witness for appellee testified that Dr. Wilde did not maintain a room at the Hospital, but slept there "two, three, or four nights a week." His duties made this necessary. This same witness testified that he did not know how often Dr. Wilde slept in the Hospital,—"but at least he has to be on duty there once in a while, and my opinion is he lives at the Hospital and in West Memphis. I don't know of any other place he could live."

Our view is that appellee failed to meet the burden of proving an intent to make Arkansas his home and to emphasize this intent with convincing manifestations. It is significant that nearly six months before the decree was granted the Doctor had gone to California. This fact of itself is not sufficient to show abandonment of a fixed abode, but when considered with the impermanent nature of his arrangements in West Memphis, and other transactions, the factual fabric preponderates in favor of appellant's contention that Dr. Wilde was out shopping for a favorable divorce field, and that the transatory nature of his abode in West Memphis was merely a venue overture, unaccompanied by an intent to remain. See *Barth* v. *Barth*, 204 Ark. 151, 161 S. W. 2d 393, citing the Hillman case (200 Ark. 340, 138 S. W. 2d 1051) ; *Gilmore* v. *Gilmore*, 204 Ark. 643, 164 S. W. 2d 446; *Parseghian* v. *Parseghian*, 206 Ark. 869, 178 S. W. 2d 49; *O'Keefe* v. *O'Keefe*, 209 Ark. 837, 192 S. W. 2d 556; *Swanson* v. *Swanson*, 212 Ark. 439, 206 S. W. 2d 169; *Cassen* v. *Cassen*, 211 Ark. 582, 201 S. W. 2d 585; *Walters* v. *Walters*, 213 Ark. 497, 211 S. W. 2d 110; *Carlson* v. *Carlson*, 198 Ark. 231, 128 S. W. 2d 242. Other cases are to the same effect.

Reversed, with directions to vacate the decree.

A fee of $100 is allowed appellant's attorney.