JENKINS *v.* JENKINS.

4-9488                                    242 S. W. 2d 124

Opinion delivered July 2, 1951.

Rehearing denied October 8, 1951.

220

Wilson, Kimpel & Nobles and Paul K. Roberts, for appellant.

*Wilson, Kimpel & Nobles* and *Paul K. Roberts,* for appellant.

*Ovid T. Switzer* and *W. P. Switzer,* for appellee.

ED. F. McFADDIN, Justice. From a decree of the Chancery Court granting the wife a divorce, and making a division of the property, the husband prosecutes this appeal, presenting the questions now to be discussed.

I. *Sufficiency of the Evidence as to Grounds of Divorce.* Appellant, Roy Jenkins, and appellee, Ida Goodwin Jenkins, were married in April, 1944. Their only child, a boy, was born in May, 1945. They lived in Crossett, Ashley County, Arkansas, where appellant worked at the paper mill and appellee was sometimes a chemist at the mill and sometimes a public school teacher. The parties separated on April 2, 1949; and this divorce suit was filed on April 26, 1949, by Mrs. Jenkins on the ground of indignities.

According to the testimony of the wife and her witnesses, Mr. Jenkins had a violent and ungovernable temper; and on occasions would strike and beat his wife. One witness saw bruises on her body inflicted by a broomstick. Others testified to tongue lashings and cursings. Mrs. Jenkins testified that on the morning of April 2, 1949, she told him that she was leaving; that he took their child from her;[1] and that when she and her

---

[1] The Chancery decree awarded the custody of the child to Mrs. Jenkins.

brother (Vascoe Goodwin) were leaving in the car, Mr. Jenkins cursed them and threatened them with a gun. In the encounter, Vascoe Goodwin shot Roy Jenkins. Appellant and his witnesses give an entirely different version of each incident; but after a careful study, we reach the conclusion that the preponderance of the evidence supports the Chancellor's findings in favor of Mrs. Jenkins as to grounds of divorce.

Furthermore, we find no merit in appellant's claim that the appellee had unconditionally condoned all of appellant's misconduct for the years prior to April 2, 1949. What we said in *Franks* v. *Franks,* 211 Ark. 919, 204 S. W. 2d 90, is *apropos:*

"Assuming, without deciding that her acts in returning and resuming the marital relation, based on his promises not to repeat the offense, constituted condonation for past mistreatment, still it was only conditional condonation. If the condition is broken by future misconduct, condoned past conduct may then be relied on in support of an action for divorce on the subsequent misconduct or both."

See, also, *Longinotti* v. *Longinotti,* 169 Ark. 1001, 277 S. W. 41, and *Denison* v. *Denison,* 189 Ark. 239, 71 S. W. 2d 1055.

II. *Jurisdiction of the Court.* The parties were living in Ashley County at the time of the separation, and neither had acquired a new domicile when the suit was filed on April 26, 1949, or when defendant's answer was filed on May 16, 1949. But the trial was delayed by the defendant; and on June 12, 1950, he filed his "Motion to Dismiss on Account of Loss of Jurisdiction," in which he made the claims: (a) that Mrs. Jenkins had in fact become a resident of Louisiana; and (b) that she was estopped to deny her Louisiana residence. The question of jurisdiction properly received first consideration and determination by the trial court, although we have, for convenience, discussed the grounds of divorce as the first item in this opinion. The testimony going to the appellant's motion is quite voluminous. As previously stated,

Mrs. Jenkins' brother, Vascoe Goodwin, shot Roy Jenkins in the encounter of April 2, 1949. Mrs. Jenkins regained custody of her child and obtained a position as school teacher at Elm Grove, Louisiana, fifteen miles from Shreveport. She was employed there during the 1949-50 term, and returned to her home in Arkansas after the completion of the school term.

(a)—Appellant contends that Mrs. Jenkins in fact became a resident of Louisiana, because when she taught school in Louisiana, she thereby changed her residence to that State. Appellant cites the following cases which hold that domiciliary residence is essential to jurisdiction of the court to grant a plaintiff a divorce: *Barth* v. *Barth,* 204 Ark. 151, 161 S. W. 2d 393; *Gilmore* v. *Gilmore,* 204 Ark. 643, 164 S. W. 2d 446; *Parseghian* v. *Parseghian,* 206 Ark. 869, 178 S. W. 2d 49; *Porter* v. *Porter,* 209 Ark. 371, 195 S. W. 2d 53; *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585; and *Walters* v. *Walters,* 213 Ark. 497, 211 S. W. 2d 110.

We affirm our holdings in the cited cases; and nothing herein is contrary to them. But, here, the plaintiff, Mrs. Jenkins, was a lifelong domiciled resident of Arkansas and went to Louisiana for only a short period without intending—or in fact accomplishing—a change of domiciliary residence. She had a home in Crossett which she leased during her absence. She testified:

"Q. When you went to Louisiana after your separation did you have any intention of establishing your home in Louisiana?

"A. I did not.

"Q. Did you have any intention of abandoning your home in Arkansas and not returning?

"A. I did not. I had all my income tax returns made in Arkansas and my home is in Arkansas. Everything I have other than my job was and is in Arkansas.

"Q. Have you taught in Louisiana before?

"A. Yes, sir.

"Q. Did you always return home to Crossett after school was out?

"A. I did.

"Q. Is it your present intention to maintain your home in Arkansas and Ashley County?

"A. Yes."

In *Wood* v. *Wood*, 140 Ark. 361, 215 S. W. 681, the contention was made that the court lost jurisdiction to grant a divorce because the plaintiff was temporarily absent from the State; and this Court, speaking through Chief Justice McCULLOCH, said:

". . . the proof is sufficient to show that plaintiff resided in Jefferson County, Arkansas, where the suit was brought, and that she had never removed from this State, but that her absence of a few months on a visit to her sister in Mississippi was only temporary."

In 27 C. J. S. 647, in discussing actual residence as essential to the jurisdiction of a court to grant a divorce, cases from many jurisdictions are listed to sustain the text:

". . . nor is a loss of domicile or residence effected by temporary absence with the intention to return."

To the same effect see, also, 17 Am. Jur. 286.

The case at bar is within the above quoted rule. This is not a case in which jurisdiction is claimed under the 90-day divorce law: the question here is whether appellee, a lifelong resident of this State, lost her legal residence by temporarily sojourning in another State while teaching school for a nine months term, after which she returned to her home in this State where she has since remained. Without reviewing the evidence in detail, we conclude that Mrs. Jenkins all the time remained, in fact, a domiciled resident of Arkansas.

(b)—Appellant next claims that Mrs. Jenkins is estopped to deny her Louisiana residence. On March 15, 1950, Roy Jenkins, claiming to have acquired residence

in Louisiana, filed, in the United States District Court at
El Dorado, Arkansas, an action against Vascoe Goodwin
and his wife, and also Mrs. Ida Jenkins, claiming dam-
ages for the pistol wounds sustained by Jenkins in the
encounter heretofore mentioned. Diversity of citizenship
between palintiff and defendants was essential to main-
tenance of the suit in the Federal Court.[2] Vascoe Good-
win's attorney contacted Mrs. Jenkins' attorney and
obtained from him permission to file a pleading for Mrs.
Jenkins in the federal case; and in the said pleading so
filed in the federal case, it was stated that Mrs. Jenkins
was a resident of the State of Louisiana. The effect of
that pleading, if its recital were true, would have been to
destroy the complete diversity essential to Federal juris-
diction.[2]

When the aforesaid pleading was filed by Vascoe
Goodwin's attorney in the Federal Court, Roy Jenkins'
attorneys voluntarily dismissed the federal case. There
was never any testimony offered in the Federal case to
show that Mrs. Jenkins was a resident of Louisiana. She
never made any such statement and never signed any
pleading in the federal case. She claimed that she went
to the federal court as a witness and did not know that
any pleading was being filed for her. Mrs. Jenkins never
talked to Vascoe Goodwin's attorney.

With becoming frankness, Mrs. Jenkins' attorney in
this divorce case stated that he had never discussed the
Federal case with her when her intervention was filed.
And, likewise with admirable candor, the attorney for
Vascoe Goodwin who filed the pleading in the Federal
Court—to the effect that Mrs. Jenkins was a resident of
Louisiana—frankly stated that he obtained his informa-
tion from Vascoe Goodwin and not from Mrs. Jenkins.
There is not the slightest reflection on any attorney on
either side in either the Federal case or this case. There
was a plain, honest misunderstanding. Merely because
some person, unauthorized by her, made a statement to
the contrary, Mrs. Jenkins is not estopped in the present
case from proving her actual domiciliary residence to be

[2] See U. S. C. A., Title 28, § 1332.

the State of Arkansas. See *Carson* v. *Hyatt,* 118 U. S. 279, 30 L. Ed. 167, 6 Sup. Ct. 1050.

So we hold that the Chancery Court of Ashley County had jurisdiction to hear and determine this divorce action between Mr. and Mrs. Jenkins.

III. *The Decree as to Division of the Property.* Appellant also attacks that part of the decree of the trial court which made a property division. As regards the personal property, we leave the decree undisturbed; because there is no showing that the personal property was owned by the parties as tenants by entirety. But the situation regarding the real estate is different. The parties owned real property which was the homestead, and the title was held by them as tenants by the entirety and had been so held since 1946.

The Chancery Court, by its decree, changed the entirety estate to an estate of tenancy in common, and awarded each spouse an undivided one-half interest as tenant in common, but all subject to the homestead rights of Mrs. Jenkins during the minority of the child. The Chancery Court also decreed Mrs. Jenkins a life estate in one-third of Mr. Jenkins' half interest in the property, and also adjudged a lien in favor of Mrs. Jenkins, on Mr. Jenkins' remaining interest, to repay her for money which she had paid to satisfy a mortgage on Mr. Jenkins' part of the real property.

We are here concerned with that portion of the decree which, in effect, changed the tenancy by entirety to tenancy in common. In so doing, the trial court was evidently following the provisions of Act 340 of 1947,[3] which may now be found in § 34-1215, Ark. Stats., and which reads as follows:

"Courts of Equity, designated Chancery Courts within the State of Arkansas, shall have the power to dissolve estates by the entirety or survivorship, in real or personal property, upon the rendition of a final decree of divorcement, and in the division and partition of said

[3] Another Act, No. 161 of 1947, is not applicable here because the property is the homestead. We have not overlooked the Act, and are not passing on it.

property, so held by said parties, shall treat the parties as tenants in common."

The question before us is whether this Act No. 340 may be constitutionally applied to an entirety estate, which, as here, was created prior to the passage of the Act.

Several cases have been before this Court necessitating, in some manner, a reference to the said Act 340. They are: *Wilkins* v. *Wilkins,* 212 Ark. 242, 206 S. W. 2d 126; *James* v. *James,* 215 Ark. 509, 221 S. W. 2d 766; and *Price* v. *Price,* 217 Ark. 6, 228 S. W. 2d 478. In *James* v. *James* (*supra*) we said:

"We find it unnecessary to pass on the applicability of said act (No. 340 of 1947) to an entirety estate alleged to have been created prior to the passage of the statute."

In a footnote to *Price* v. *Price* (*supra*), we said:

"We are not called on, at this time, to determine the effect of the 1947 Act on entirety titles created before its enactment. (See 1 Ark. Law Review 220.)"

In none of the cases cited have we decided the question here presented which is, whether the Act 340 of 1947 must be viewed prospectively only, or whether it may constitutionally be applied to entirety estates created before its passage.

We have repeatedly held that a decree of divorce cannot dissolve an entirety estate. See *Roulston* v. *Hall,* 66 Ark. 305, 50 S. W. 690; *Heinrich* v. *Heinrich,* 177 Ark. 250, 6 S. W. 2d 21; *Ward* v. *Ward,* 186 Ark. 196, 53 S. W. 2d 8; and *Davies* v. *Johnson,* 124 Ark. 390, 187 S. W. 323. In *Heinrich* v. *Heinrich* (*supra*) we said:

"An estate by entirety, either legal or equitable, cannot be divested out of the husband and invested in the wife, or *vice versa,* by the courts. The right to the whole estate by the survivor prevents this. *Roulston* v. *Hall,* 66 Ark. 305, 50 S. W. 690, 74 A. S. R. 97."

The majority of the jurisdictions hold that divorce dissolves the entirety estate; but our holding to the opposite conclusion has become a rule of property in this State.

In order to enable the Courts in a decree of divorce to dissolve an entirety estate, the Legislature adopted the Act 340 of 1947. But entirety estates created prior to the enactment of that legislation had given the holders vested rights; and absent—as here—any question of police power, the authorities on constitutional law recognize that the Legislature may not retrospectively destroy vested rights.[4] In 41 C. J. S. 446, "Husband and Wife," § 31, in discussing the effect of subsequent legislation on entirety estates, the rationale of the holdings is summarized:

"*Subsequent legislation.* Where an estate by entirety has been created and the rights of the parties have become fixed and vested, neither the nature of the estate nor the rights of the parties are enlarged, abridged, or otherwise affected by subsequent legislation."[5]

We therefore hold that said Act 340 of 1947 cannot operate retrospectively so as to affect entirety estates created prior to the passage of such legislation. It follows, therefore, that the Learned Chancery Court was in error in changing the preëxisting entirety estate to an estate of tenancy in common, and in awarding Mrs. Jenkins dower in the entirety estate. For the error indicated, the decree is reversed as to the division of the real estate, and the cause, as to that point only, is remanded for entry of a decree in accordance with this opinion. In all other respects the decree is affirmed. All costs are adjudged against the appellant, including the attorney's fee of $50 already allowed by this Court, and an additional fee of $100 now allowed.

The Chief Justice and Mr. Justice WARD dissent in part.

---

[4] In 12 C. J. 955, this is stated: "Rights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest."

[5] The text in Corpus Juris Secundum continues:

"Thus statutes abolishing survivorship in estates by entirety unless such right is expressly provided for, statutes providing that all conveyances to husband and wife shall be construed to create estates in common and not in joint tenancy or entirety unless it appears from the tenor of the instrument that the intention was to create an estate in joint tenancy with a right to the survivor, and statutes relating to the separate property of married women have been held to have no retroactive effect as regards estates by entirety."