The Honorable W. J. "Bill" McCuen Secretary of State State Capitol Little Rock, Arkansas 72201
Dear Mr. McCuen:
This is in response to your request for an opinion concerning the new initiated act entitled "The Standards of Conduct and Disclosure Act for Candidates and Political Campaigns" (referred to herein as "the act" or "the new act") which was passed by the electorate at the 1990 general election. Specifically, you have noted that A.C.A. 7-6-203 (j), which is found at Section 3 (j) of the act, becomes effective November 7, 1990. That section provides:
 (j) Within thirty (30) days following a general election, a candidate shall turn over to either (1) the State Treasurer for the benefit of the general revenue fund of the state apportionment fund, (2) an organized political party as defined in Arkansas Code 7-1-101(1), or (3) the contributors to the candidate's campaign any balance of campaign funds over expenses incurred as of the day of the election except for (1) an amount equal to the yearly salary, excluding expense allowances, set by Arkansas law for the office sought and (2) any funds required to reimburse the candidate for personal funds contributed to the campaign or to repay loans made by financial institutions to the candidate and applied to the campaign.
Your question, with respect to the provision above is whether campaign contributions received prior to the effective date of the act are subject to the requirements of Section 3(j). That is, you wish to know whether candidates participating in the 1990 election, many of whom accepted campaign contributions many months or years prior to that election, are now required by the new act to return the balance of campaign contributions, as defined, to one of the three entities listed in the act.
Your question involves an analysis of whether Section 3(j) of the new act will have retroactive application. Cases are legion in Arkansas for the proposition that statutes dealing with matters of substance rather than procedure are presumed to be non-retroactive. See e.g. Huffman v. Dawkins, 273 Ark. 520,622 S.W.2d 159 (1981). Procedural statutes, on the other hand, operate retroactively as well as prospectively. Ward v. Davis, 298 Ark. 48, 765 S.W.2d 5 (1989). A statute will be construed retroactively, however, if the intention of the legislature that a statute be retroactive is expressly declared or is necessarily implied from the language used. Myers v. Council Mfg. Corp., 276 F. Supp. 541 (E.D.Ark. 1967); Chism v. Phelps, 228 Ark. 936, 311 S.W.2d 297. (1958).
Thus, our first inquiry must be whether there is an express declaration in the act that Section 3 (j) have retroactive effect, or whether that conclusion is necessarily implied from the language used.
Section 9 of the act is entitled "Effective date", and it provides as follows:
 Unless otherwise indicated herein, the provisions of this Initiated Act shall become effective on December 7, 1990, except that Section 1, Section 2, Section 3(e) and (j), Section 4, and Section 7-6-215 of Section 6 shall become effective on November 7, 1990.
As can be seen from the provision above, Section 3(j), the section about which you inquire, became effective on November 7, 1990, the day after the general election. We believe that some evidence of intent as to the section's retroactivity can be gleaned from its effective date. Many other provisions of the act become effective December 7, 1990. If the act had provided that Section 3(j) was to become effective on December 7, 1990, the section could have had no applicability to the 1990 general election. This is true because had the section become effective December 7, the time period for complying with its provisions would pass before the act ever became effective. That is, on December 7, the thirty day time period after the election for turning over the campaign contributions would have already expired. The time period for complying with the act would have passed before the act ever became effective. Because Section 3(j) becomes effective on November 7, 1990, it is possible for 1990 candidates to comply with its provisions. This fact, in my opinion, implies that the section is to have applicability to the 1990 general election.
Of additional import is the fact that reference is made to the 1990 general election in other sections of the act. Section 5(a)(3) of the act, which deals with filing quarterly supplemental reports, specifically mentions 1990 candidates by stating that:
 For candidates participating in the general election of 1990, the quarterly reports shall be filed for all contributions received and expenditures made after the time period covered by the final report required by the law in effect at the time of approval of this act.
From all of the above, it is my opinion that it may be reasonably concluded that the language of the act "necessarily implies" that Section 3(j) is to have "retroactive application:" and to apply to 1990 candidates.
Our inquiry, however, does not end with the conclusion above. A statute having retroactive application may be unconstitutional if it disturbs "vested rights". The concept is explained at 16A C.J.S. Constitutional Law 393, 228 and 229 as follows:
 As a general rule, retrospective laws are unconstitutional if they disturb or destroy existing or vested rights, as where they disturb or destroy existing or vested rights embodied in judgments or judicial decisions. This rule is also applicable to laws which create new obligations with respect to past transactions. . . In any event, the rule condemning retroactive legislation as impairing vested rights applies only to rights which have become vested.
* * *
 Rights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. A vested right is a title to the present or future enjoyment of property. . . . The right must be immediate, absolute, complete, and unconditional, independent of a contingency. . . .
 Before the adoption of the Fourteenth Amendment, there was no prohibition in the Constitution of the United States which would prevent the states from passing laws divesting vested rights unless these laws also impaired the obligation of contracts, or were ex post facto laws, but vested property rights are now protected against state action by the provision of the Fourteenth Amendment that no state shall deprive any person of life, liberty, or property without due process of law. [Footnotes omitted.]
16A C.J.S. Constitutional Law 393, 228-229, at 314-216, 22, 25.
The 1990 candidates could argue that they have a vested right in campaign contributions received prior to the effective date of the act. Prior law placed no obligation on a candidate to turn over unused campaign contributions. There was, and in fact is now, no prohibition against opposed candidates accepting campaign contributions as personal income. The question then becomes whether a 1990 candidate acquired a "vested right" in campaign contributions received at a time when there was no law requiring the candidate to turn over the funds after the election; and if so, whether this vested right can constitutionally be taken away by an initiated act.
We have found no federal or state cases from any state addressing this precise issue. See, however, generally, Fortson v. Weeks, 232 Ga. 472, 208 S.E.2d 68 (1974).
As stated above, the general rule is that retroactive laws which disturb `vested rights' are unconstitutional. Here, it is my opinion that a 1990 candidate's acceptance of campaign contributions prior to the 1990 general election may have solidified as a `vested right' upon receipt. The right to enjoyment of these funds became a present interest of the candidate upon their receipt. There was no contingency existing at the time of receipt of these funds. Title to them had likely passed. We are not unmindful of the fact that surplus campaign funds left after the election constitute a windfall to the candidate. This fact may militate against a finding of a vested right. A court may not be terribly sympathetic to a candidate's claim of a vested right in a windfall. But as a purely legal matter, title to these funds is probably vested in the candidate.
Thus, if one is to follow the "general rule", the application of Section 3(j) to 1990 candidates would be unconstitutional.
There may be some instances, however, where the general rule will not apply. The concept is summarized as follows:
 Under some authorities, the validity of retroactive legislation is determined by a consideration of its reasonableness; and whether the law is in furtherance of the police powers of the state; in this aspect, the courts compare the public interest in the law with the private interests that are overturned by it. The test is whether the legislation represents a rational means to achieve legitimate ends, not strictly whether the law abrogates a vested right.
 The criteria to be considered in determining whether the legislation can pass such test include the reliance interests of the parties affected, whether the private interest was in an area previously subject to regulatory control, the equities of imposing the legislative burdens, and the inclusion of statutory provisions designed to moderate the impact of the new law. Legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectation. [Footnotes omitted.]
16A C.J.S. Constitutional Law 392 at 313-314.
We have found no Arkansas case law applying this "balancing" approach, but it appears that our court has at least recognized that vested rights may be disturbed in some instances where an exercise of the police power is involved. In Jenkins v. Jenkins, 219 Ark. 219, 242 S.W.2d 124 (1951) (a divorce case), the court stated that:
 . . . entirety estates created prior to the enactment of that legislation had given the holders vested rights; and absent — as here — any question of police power, the authorities on constitutional law recognize that the Legislature may not retrospectively destroy vested rights. [Emphasis added.]
219 Ark. at 227.
Although we have not found any Arkansas cases holding vested rights subject to the police power under a "balancing approach", it is possible that the issue presented herein could give rise to such a holding by a court faced with the issue. Clearly, the provisions of the "Standards of Conduct and Disclosure Act for Candidates and Political Campaigns" is an exercise of the police power. It is intended to prevent the commission of fraud and crime, and secure generally the comfort, safety, morals, health, and prosperity of the citizens. See generally, Black's Law Dictionary, (5th ed. 1979) at 1041. In this instance, additionally, the exercise of the police power is undertaken by the people themselves, through an initiated act. If our courts were to apply a "balancing approach" in undertaking a vested rights analysis, it is my opinion that the issue you have raised could present a likely case for its implementation. The court would be much more likely to apply a balancing approach in this instance than in a case involving strictly private rights. The regulation of campaign contributions is replete with the public interest.
In light of all of the foregoing, it is my opinion that the question of whether Section 3 (j) of the act may be applied to candidates participating in the 1990 general election is a very close one. The general rule appears to be that its application to these candidates would be unconstitutional. There is, however, room for a court to disregard the general rule, and balance the interest of the state passing the law against the interests of a candidate in his or her campaign funds. A court applying this approach could conclude that the application of Section 3 (j) to 1990 candidates would be constitutionally permissible. As always, predicting what a court would hold on a close issue is an uncertain business. It must be recognized in this instance, however, that all laws are presumed constitutional. Stone v. State,254 Ark. 1011, 4987 S.W.2d 634 (1973). The presumption of constitutionality attaches, and the act will not be held invalid for repugnance to the Constitution unless the conflict is clear and unmistakable. Buzbee v. Hutton,186 Ark. 134, 52 S.W.2d 647 (1932); Board of Trustees of the Municipal Judges and Clerk's Fund et al v. Beard, 273 Ark. 423,620 S.W.2d 295 (1981).
Based upon the foregoing, we are unable to state in this instance that the act is clearly and unmistakably unconstitutional. We are compelled to accord the act the presumption of constitutionality which attaches to all acts. See, e.g., St. Louis Iron Mountain Southern Railway Co. v. State, 99 Ark. 1, 136 S.W. 938 (1911). We must thus conclude that the answer to your question is "yes". Campaign contributions received prior to the effective date of the act will become subject to the requirements of Section 3(j). An important qualification, however, must be added to this conclusion. It is my opinion that under Section 3(j), 1990 candidates must turn over only the balance of those campaign contributions contributed to the candidate's 1990 campaign, and not prior campaigns. This conclusion is compelled by the language of Section 3(j). The language of that section states that the candidate shall turn over "any balance of campaign funds over expenses incurred as of the day of the election". [Emphasis added.] It does not say the candidate shall turn over [the balance of any] campaign funds over expenses incurred as of the day of the election. it is thus my opinion that the language does not refer back to campaign funds received for previous elections. Other language of the section, which refers to "a general election", "the candidate's campaign" and "the campaign" also supports this conclusion. The overall tenor of the act, moreover, contemplates compliance on an election per election basis. While we find sufficient evidence of intent to conclude that Section 3(j) was intended to apply to 1990 campaign funds, we cannot conclude, based upon the language of the act, that Section 3(j) is to have applicability to campaign funds contributed to previous election campaigns.
Additionally, we have concluded that Section 3(j) has retroactive application based primarily upon its effective date. That date, necessarily implies, in my opinion, that the section is to be applicable to the 1990 election. Reference to this date, however, does not provide any evidence that the section is to have retroactive effect to campaign funds received for elections prior to the 1990 election.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
RON FIELDS Attorney General
RF:arb
[1] It is my opinion that this rule is also applicable to acts initiated by the people.
[2] The new act prohibits only unopposed candidates from taking campaign funds as personal income. See Sections 3(h) and (i). Prior to the new act there apparently was no prohibition against even unopposed candidates accepting campaign funds as personal income.
[3] In Fortson, the Georgia Supreme Court held that the retroactive application of campaign reporting requirements did "not affect vested rights of citizens so as to offend constitutional prohibitions against the enactment of a retrospective statute." Fortson, supra at 77. The issue here presented, however, is very different from the one presented in Fortson. The right not to disclose contributors cannot be equated with the right to keep the campaign funds, once received. There is a more tangible property interest at stake in the latter case.
[4] It is only with respect to these candidates that a constitutional issue arises. This section of the act poses no `vested rights' problem as regards new campaign contributions accepted by candidates in future general elections.