Carmen MOORE (Formerly Davidson) *v.* Fred DAVIDSON

CA 03-653                                                    145 S.W.3d 833

Court of Appeals of Arkansas
Division III
Opinion delivered February 11, 2004

*Ian W. Vickery*, for appellant.

*Ronald P. Griggs*, for appellee.

ANDREE LAYTON ROAF, Judge. Carmen Moore appeals the circuit court's denial of her divorce complaint. For her sole point on appeal, Moore argues that the circuit court erred when it found that there was insufficient evidence to corroborate her grounds of general indignities. We reverse and remand.

Carmen Moore filed a petition for divorce from her husband, Fred J. Davidson. In her complaint, Moore alleged that she suffered general indignities. Davidson answered her complaint, denying all material allegations and requesting that the court deny the petition for divorce. The following testimony was elicited at the final hearing. Moore testified that she filed for a divorce based on personal indignities. She stated that Davidson accused her of lying, stealing, and of infidelity. These accusations, according to Moore, were continuous and ongoing throughout the marriage. For example, Moore testified that if she needed to go away on business, to a meeting for work, or to lunch, her husband accused her of meeting another man. She stated that she had to ask permission to have lunch with other people, and upon returning from lunch she had to notify Davidson of that and report what she ate for lunch. Davidson also accused her of stealing Wal-Mart stock certificates, when he had removed them from the safety deposit box himself one month prior to the accusation. Davidson constantly insisted that Moore did not contribute to the household.

Moore testified about several specific incidents of verbal and physical abuse. First, Moore described an incident where she and Davidson were visiting with friends at their home. She commented that if the Wal-Mart stock split again she would retire. Davidson commented angrily, "I don't think you have got a dime in that stock. If anybody is going to retire, it's going to be me."

Moore testified that her husband had been physically abusive on two separate occasions. In September 1997, Davidson slammed her against the cabinet and threw her to the floor. In March 1998, Davidson threw her to the floor and began choking her. Moore stated that after the incident she had bruises on her neck.

Moore also testified that when her car once broke down thirty miles from home, she phoned Davidson for help, and he refused to come. Moore was upset by Davidson's response, and left the marital home for several days, but eventually moved back. On cross-examination, Moore admitted that she resumed a sexual relationship with her husband after all of these incidents. Finally, Moore testified that one morning after she filed for divorce, Davidson entered the kitchen and asked if Moore would like to live to see her grandchildren grow up. Moore asked if he was threatening her, and he responded, "Would I do that?" Moore considered the comment a threat to her life.

Moore presented the following evidence as corroboration of her grounds. Kevin Gandy, one of Moore's co-workers, testified that he "got the impression that her marriage was oppressive." He observed bruises on her neck on two occasions and offered to lend Moore his neck brace. He testified that the bruises were on both sides of her neck and it looked like someone tried to choke her. Although Gandy saw the bruises on two occasions, he did not see Davidson put them there. He also testified that when he and Moore went to lunch, she would call Davidson for permission and again when she returned. Derrell Scharbor testified that he was one of the friends present during the discussion about retiring off the Wal-Mart stock. He stated that Davidson was angry, and that he also observed Davidson get angry when Moore broke a lawn-mower. According to Scharbor, Davidson kept yelling at Moore until she left crying. However, Scharbor admitted that he had not observed any physical abuse. Danielle White, Moore's daughter, testified that she also observed bruises on her mother's neck. She said that Moore told her Davidson put the bruises on her neck. White also testified that she had observed Moore call Davidson for permission to go to lunch, and then call again when she returned and report what she ate. At the end of this testimony, Davidson moved for a directed verdict. The court denied the motion, stating that Moore had made a *prima facie* case.

Davidson then put on his case. Perry Tombs, an auto mechanic, testified that on the day Moore was stranded, Davidson called several times to insure Moore had been helped. But, he

admitted that it was Moore who contacted him for help, not Davidson. Caleb Mason testified that Moore told him she wanted a divorce because she was unhappy. Davidson testified and in essence denied all of Moore's allegations. He stated that he never humiliated Moore in front of a group of people, accused her of cheating, or told her she did not contribute to the household. He asserted that the incident about the Wal–Mart stock was not "a big deal" because it was just a conversation, and that Moore did not complain or cry; that he has never been physically violent toward Moore; that prior to the divorce he had never accused Moore of being unfaithful; and that "all of the grounds that [Moore] asserts are false." He did admit that he did not think the parties could reconcile their marriage.

At the close of all evidence, the trial court took the case under advisement. The court later issued an order denying Moore's petition for divorce, finding that she had failed to corroborate her grounds for divorce. The order further provided that "the issue of condonation raised by [Davidson] — is not reached. The conclusion is that [Moore] has not sustained her burden of proof."

■ Divorce cases are reviewed *de novo* on appeal, and will not be reversed unless the trial court's decision is clearly erroneous. This court gives due regard to the trial court's superior position in judging the credibility of witnesses. *Russell v. Russell,* 19 Ark. App. 119, 717 S.W.2d 820 (1986).

■■ It is well settled that a petition for divorce will not be granted on the testimony of the complainant alone, even if the defendant admits the allegations, but it must be corroborated by other evidence to establish the truth of the assertion. *Goodlett v. Goodlett,* 206 Ark. 1048, 178 S.W.2d 666 (1944).

> Corroboration, in the sense of our divorce laws, is testimony of some substantial fact or circumstance independent of the statement of a witness which leads an impartial and reasonable mind to believe that material testimony of that witness is true. Where a particular fact or circumstance is vital to a complainant's case, some evidence thereof, in addition to the complainant's testimony, is necessary to constitute corroboration.

*Welch v. Welch,* 254 Ark. 84, 87, 491 S.W.2d 598, 601 (1973).

■ In *Goodlett, supra,* the supreme court affirmed the lower court's grant of Mrs. Goodlett's divorce complaint. Mrs. Goodlett

filed for divorce alleging general indignities and cruel and barbarous treatment. "She testified that on numerous occasions appellant cruelly abused her calling her vile names, and frequently struck her and beat her, so that on numerous occasions there were black and blue bruised places on her body." *Id.* at 1049-50, 178 S.W.2d at 666. "Numerous witnesses saw the bruised places on [Mrs. Goodlett] shortly after [she] said [Mr. Goodlett] had beaten her." *Id.* at 1050, 178 S.W.2d at 666. While the witnesses did not see Mr. Goodlett beat his wife, the court opined that the existence of the bruises on Mrs. Goodlett's body constituted corroboration of her testimony that Mr. Goodlett beat her, in the absence of any showing to the contrary. The court also pointed to an incident whereby the neighbors heard Mrs. Goodlett screaming and ran to their porches. The police were called, and Mr. Goodlett admitted striking his wife. The court stated that this incident also corroborated Mrs. Goodlett's testimony that her husband beat her during the marriage. The court stated: "The purpose of the rule requiring corroboration is to prevent procuring divorces through collusion, and that where it is plain there is no collusion, the corroboration may be comparatively slight." *Id.* at 1051, 178 S.W.2d at 667.

In *Franks v. Franks*, 211 Ark. 919, 204 S.W.2d 90 (1947), the supreme court affirmed the grant of a divorce to Agnes Franks on the grounds of general indignities and cruel treatment. Mr. Franks appealed, arguing that the allegations had not been sufficiently corroborated. The court held that the testimony was sufficiently corroborated and there was no suggestion of collusion, reiterating that where it is plain that there is no collusion, "corroboration may be comparatively slight." *Id.* at 922, 204 S.W.2d at 91. Moreover, our supreme court has stated that in a hotly contested divorce action, evidence on corroboration need be only slight. *See Anderson v. Anderson*, 234 Ark. 379, 352 S.W.2d 369 (1962).

In the case before us, there is no suggestion of collusion. The divorce action was contested, with each party presenting witnesses to support their version of events. Therefore, corroboration of Moore's testimony need be only slight. It is also not necessary for the witnesses to corroborate every detail of Moore's testimony. In his letter opinion, the trial judge noted that Moore's testimony was corroborated in some respects; however, he found that she did not corroborate the incidents involving the alleged death threat or the incident where her vehicle broke down.

■ Moore presented a number of witnesses to corroborate her grounds for divorce. Moore alleged that Davidson had been physically abusive, and although no one witnessed this alleged assault, both Danielle White and Kevin Gandy testified that they observed bruises on Moore's neck after the alleged assault. This is corroborative evidence in that the witnesses observed the bruises shortly after the alleged assault. *See Goodlett, supra.* Derrell Scharbor testified that he observed Davidson get angry with Moore on two separate occasions, once while discussing the Wal-Mart stock and another when Moore broke the lawnmower. While these are just two instances, our supreme court has stated that where more than one instance of the alleged maltreatment is established, it is sufficient corroboration of the plaintiff's testimony as a whole. *Goodlett, supra; Coffey v. Coffey,* 223 Ark. 607, 267 S.W.2d 499 (1954). In this case, Scharbor's observations of Davidson's temper on two occasions are corroborative of Moore's testimony that Davidson was verbally abusive. Moore also testified that Davidson constantly and throughout the entire marriage accused her of being unfaithful. She had to report on her activities, including requesting permission to have lunch, even with her own daughter, and was required to report back to Davidson when she returned. Both Gandy and White testified that they were present when Moore requested permission to have lunch and when she called Davidson to report back. White also testified that she once observed Davidson standing outside of the restaurant where she and Moore were dining for lunch. Thus, their testimony is corroborative of Moore's testimony that Davidson constantly and unreasonably monitored her activities.

■■ It was not necessary for Moore to corroborate every minute detail of her testimony. *Coffey, supra.* While some of the above incidents when viewed separately may seem relatively minor, the supreme court has held that such incidents together can produce cumulative results sufficient to support grounds of general indignities. *Anderson, supra.* Accordingly, we hold that the trial court erred in denying Moore a divorce based on insufficient evidence of corroboration.

■ Davidson also argues that even if this court finds that Moore's testimony is sufficiently corroborated, she is not entitled to a divorce because she repeatedly condoned Davidson's actions. However, the lower court did not rule on this issue, and Davidson

did not further request a ruling, or file a contingent cross–appeal. Consequently, we do not address it. *Wilson v. Rodgers,* 250 Ark. 335, 356, 468 S.W.2d 739, 751-52 (1971) (quoting *Fordyce v. Vickers,* 99 Ark. 500, 507, 138 S.W. 1010, 1012 (1911) (holding "where the chancellor has decided a case upon an issue . . . of law, in which we find that he was in error, and leaves undecided other issues. . . , which he is probably better able to pass upon by reasons of his greater familiarity with the circumstances and conditions surrounding said issues, this court in its discretion may remand the case for his decision")).

Accordingly, we reverse and remand for proceedings consistent with this opinion.

ROBBINS and BAKER, JJ., agree.