## CARPENTER *v*. GIBSON.

### Opinion delivered May 20, 1912.

1. HUSBAND AND WIFE—EFFECT OF DEED FROM HUSBAND TO WIFE.— Where a husband purchases and pays for land and takes deed to his wife, it will be presumed that he intended to make a gift to her. (Page 36.)

2. SAME—WHEN PRESUMPTION OF ADVANCEMENT OVERCOME.—The presumption that a husband in buying land and taking deed to his wife intended to make a gift to her is not conclusive, but may be rebutted by proof that she was to hold in trust for him; but the evidence to establish such trust must be clear and manifest. (Page 36.)

3. TRUSTS—EVIDENCE.—Parol evidence is inadmissible to engraft an express trust upon a deed absolute in its terms. (Page 37.)

Appeal from Arkansas Chancery Court; *John M. Elliott*, Chancellor; affirmed.

STATEMENT BY THE COURa.

Appellee brought an action in ejectment against appellant for certain lots in the town of DeWitt, claiming title thereto under a deed from Hattie Carpenter, wife of appellant.

Appellant claimed that he purchased the property as a homestead, paid his own money therefor, and took the deed thereto in the name of his wife, who was to hold same in trust for his benefit; alleged that he was in possession of it at the time of appellee's purchase and the conveyance to her, and that she was not an innocent purchaser thereof; and moved a transfer of the cause to equity. A reply was filed, denying all the allegations of the answer.

The testimony is voluminous, and tends substantially to show that appellant purchased a home first in Stuttgart, the title to which was placed in his wife's name; that thereafter it was sold, and that with a part of the proceeds the property in controversy at DeWitt was purchased, the title thereto being taken in Hattie Carpenter's, the wife's, name; that she

was not pleased with the locality and desired to move away. She mortgaged the property in March, 1906, her husband joining in the execution of the mortgage to appellee to secure a loan of $400. The money thus secured was deposited in the bank in her name, and she drew a check for a certain amount against it to pay off another incumbrance, and the account was continued in her name, and the money all drawn out by her checks, and it was not the custom of appellant to keep his bank account in his wife's name. She later left home, taking the five children of the marriage with her, and resided for a time in Iowa. In September, 1906, she sold the property and conveyed it by ordinary warranty deed to appellee for the consideration of the mortgage debt and $800 additional. Appellant and his daughter, by his first wife, were living in the house at the time of this conveyance, about a city block distant from appellee, who testified that she had had the records examined; that they showed the title to the lands to be in Hattie Carpenter; that she did not know at the time of the purchase that she had abandoned her husband, and bought the lots in good faith believing that Hattie Carpenter was the owner thereof as the records in the recorder's office showed her to be.

Appellant testified that he paid all the purchase money for the property; that the deed was taken in his wife's name; that he came near dying in 1900, and, after getting up, discussed with his wife the homestead law, telling her if he died she would have to keep the homestead until the youngest child became of age. His wife objected to staying in Arkansas, and said she would not stay and keep the home if he were to die. They then talked about making a will, and leaving it so it could be sold by her in case of his death, but that was not satisfactory to him, he said, and "then we talked about a deed to her, so that if I died she could sell the home and go back whence she came and buy another home for the family. I studied the matter over, and we talked it over many times, and it was understood and agreed that if I did that way it was still to be mine just the same as before, that it was still my property, and my home for myself and my children, and that my daughter, Bernice, was to have her share in it just the same, and the deed was changed only

for that one use and purpose; that is, so that she could sell it when I died and reinvest it in another home, and that then Bernice should have a voice in selecting the new home, or her share out of it in cash. I had faith in my wife, and, after studying it over for a considerable time, I decided to do it, for I feared that after I died she would abandon the place, as she said she would, and no matter how nice a home I had it would go to ruin before the youngest child came of age. We clearly understood the situation and the agreement, both of us. * * * When the DeWitt property was purchased, a deed was made to my wife with exactly the same agreement and understanding as when I made the deed to her for the Stuttgart property. * * * I certainly would not have bought that nice home, and left my daughter, Bernice, out of it, if I hadn't thought and believed her agreements would be kept, that I would always have it for a home, and that Bernice would have her share in it, just the same as if it had been in my name."

Mrs. Hattie Carpenter left home in March, 1906, with her five children, and remained away until March, 1908, supporting herself and family during the time. She returned in 1908, and, without objection, testified about as did appellant, first saying: "It was in 1909, August, this property was put in my name for a home for us all, and because I desired, if Mr. Carpenter was to die and leave me with those children, to leave DeWitt and get into a better location without waiting until the children would become of age, which I would have had to have done if the deed had been in his name." She also stated that at the time she made the conveyance of the property to appellee she understood it belonged to her, and that she had the right to convey it, and her letters to appellee, in evidence relating to the sale, show that she claimed it as her absolute property; said her title was gilt-edged, and denied that appellant had any interest in it whatever. She further testified that the money received from the sale was needed and used for the support of herself and the children, during her absence from home.

The daughter, Bernice, testified that she had been in partnership with her father in the abstract business, having lived with the family in Stuttgart during the winter months;

that the property there was in Mrs. Carpenter's name, held in trust for the children; and, to the question, "Now, as a matter of fact, wasn't this property in Stuttgart held in trust for your father?" answered, "No." Q. "For whom was it held in trust?" A. "For us children." That she knew of no agreement made with reference to the DeWitt property. Other witnesses testified that appellant had said to them that the property belonged to his wife, and stated to some of them that the conveyance was made to put it beyond the reach of his creditors. That in all business dealing relating to it, in the way of making mortgages, it was always regarded as his wife's property.

There was testimony of a lawsuit instituted by appellant, in the name of one Acklin, against Hattie Carpenter, for possession of certain lands, including the lots in controversy, in which it was alleged that Acklin was the owner thereof by virtue of a contract duly executed and delivered and an injunction was prayed to prevent her disposing of them. This was filed by W. N. Carpenter, as attorney, for Acklin, and summons issued on July 14, 1906, He also filed what purports to be a notice of suit pending, including the same land, with the clerk, on that day. He admits in his testimony in this trial that Acklin did not know of having any claim or title to the lands nor of appellants having filed any such suit therefor. He made affidavit in that suit of an agreement of settlement with his wife, in which he stated he had sold her rights to the property in controversy to plaintiff, agreeing to accept therefor a certain sum of money, a portion of which was paid to her, and executed a deed therefor to plaintiff saving the homestead rights of W. N. Carpenter, and that she vacated the possession of the property thereafter. The court overruled his motion for judgment, and dismissed that complaint for want of equity. After appellee received the deed from Hattie Carpenter to the lots and paid the money to the bank, in accordance with her directions, and recorded said deed, she was notified by appellant that he claimed an interest in said land, and she then made an earnest, but fruitless, effort to get her money back and reconvey the lands to Hattie Carpenter, going so far as to institute a suit for an injunction to prevent the bank paying the money over.

The chancellor found for appellee, and decreed a recovery of the lots, and dismissed appellant's cross complaint for want of equity.

*H. A Parker*, for appellant.

1. The presumption that, where a husband buys real estate, paying for it himself and having the deed made to his wife, he does so as an advancement may be overcome by proof. 45 Ark. 481; 48 Ark. 17; 40 Ark. 62; 71 Ark. 373; The Milner case, 40 Ark. 62, *supra*, is conclusive of this case.

2. Appellant's possession of the property was notice to the world of his title. 33 Ark. 465; 16 Ark. 374-5; 16 Ark. 25, and cases cited; 77 Ark. 316.

*John L. Ingram, Edwin Pettit* and *C. E. Pettit*, for appellee.

If it were true that the property was not an advancement to Mrs. Carpenter and that there is an implied trust in favor of appellant, yet appellee had no notice of this, and she was an innocent purchaser. The *lis pendens* in the suit of Ackers *v.* Carpenter was no notice, neither was the mere occupancy by appellant of what was apparently his wife's property any notice. 39 Cyc. 1760. There was no trust. Mrs. Carpenter's title was absolute.

KIRBY, J., (after stating the facts). It is contended by appellant that the lots in controversy were not a gift to his wife, but were held in trust for him.

In *Harbour* v. *Harbour*, 103 Ark. 273, the court said: "It has been frequently held that where the husband purchased and paid for lands, taking the deed therefor in the name of his wife, the presumption is that his money, thus used, was intended as a gift to her, and the law does not imply a promise or obligation on her part to refund the money or to divide the property purchased or to hold the same in trust for him. His conduct is referable to his affection for her and his duty to protect her against want, and it will be presumed to be a gift, and, so far as he is concerned, becomes absolutely her property. *Wood* v. *Wood*, 100 Ark. 370; *Womack* v. *Womack*, 73 Ark. 281; *O'Hair* v. *O'Hair*, 76 Ark. 389."

This presumption is not conclusive, however, and may be rebutted by evidence of facts and declarations antecedent to and contemporaneous with the conveyance, showing that

the intention of the husband was to have his wife hold the land in trust for him and that he did not intend to make her a gift thereof. But the evidence necessary to overcome the presumption of an advancement and prove a resulting trust must not only be distinct and credible, but must preponderate, as said in *Robinson* v. *Robinson*, 45 Ark. 484; *Chambers* v. *Michael*, 71 Ark. 373.

In *Bogy* v. *Roberts*, 48 Ark. 18, the court, holding land purchased by the father in the name of his children an advancement, said: "Where the proof does not make it clear and manifest that a trust was intended by the purchase, equity follows the law and leaves the estate with the child."

In this case it is questionable from appellant's own testimony whether he had any intention at the time of the conveyance to his wife that she should hold the lands as trustee for him or his benefit. His statement does not exclude, and rather warrants, the inference that the conveyance was made to her for her and the children's benefit, that she might dispose of it in case of his death without any restraint from the law relating to the homestead rights of the minor children.

The wife's testimony, now to the same effect as his own, since she returned and is living with him, is entitled to little credit as against her written declaration of an altogether different condition and denial of any interest whatever of appellant in the lands when she made the sale and conveyance thereof and received the money in payment therefor.

Upon the whole case, the proof does not make it clear and manifest that a trust for his benefit was intended, nor overcome the presumption of an advancement by preponderance of distinct and credible evidence. It tends rather to show the intention to create a trust in the lands in favor of his children, which can only be manifested by a writing, and parol evidence will not be heard to graft an express trust upon a deed absolute in its terms, as was the deed here. Kirby's Digest, § 3666; *Spradling* v. *Spradling*, 101 Ark. 451; *Harbour* v. *Harbour, supra.*

Appellant had these lands conveyed to his wife that she might dispose of them for her own and his children's benefit, in case of his death, without hindrance; and, notwithstanding she anticipated the time and disposed of the lands sooner than

he intended, she received about the value thereof, and the money was used for her own and the children's benefit, and, under the circumstances, he has no just cause of complaint against appellee, the purchaser thereof.

The decree of the chancellor was right, and is affirmed.