James *v.* James.

4-8917                                        221 S. W. 2d 766

Opinion delivered June 13, 1949.

Rehearing denied July 4, 1949.

510

*Dinning & Dinning,* for appellant.

*A. M. Coates,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, Freddie James, sued appellee, Claude James, for divorce alleging as grounds therefor general indignities and cruelty. In his answer and cross-complaint appellee denied the allegations of the complaint and charged that appellant had been living in adultery since December 25, 1947. Appellee further alleged in his cross-complaint that when the parties commenced living together in July, 1934, appellant had contracted to purchase Lot 11, Block 65 in the City of West Helena, Arkansas; that he paid a balance still due on the purchase price of the vacant lot and constructed a dwelling house thereon at a cost to him of $1,200 with the understanding and agreement that they would hold said lot as their joint property; that the parties still occupied the property as a homestead although they lived separate and apart; and that after the parties married in 1940, they purchased adjoining Lot 12 as an estate by the entirety. The prayer of appellee's cross-complaint was that he be granted a divorce and adjudged to be the owner of a one-half interest in Lot 12 and that a lien on Lot 11 be adjudged in his favor to the extent of the monies expended by him in the construction of the house; and that said property be ordered sold and the proceeds divided between the parties.

Appellant filed an answer to the cross-complaint in which she denied that appellee had contributed anything toward the purchase price of the lot or the cost of the residence, except a small amount of labor for which he had been duly compensated by occupying the home for several years.

The decree awarded appellant a divorce on the grounds alleged in her complaint and dismissed appellee's cross-complaint for divorce. The court further found that the balance of the purchase price and the construction of the residence on Lot 11 had been paid for by the joint efforts of the parties under an agreement that title would be placed in them jointly; that appellant failed and refused to carry out the agreement and appellee should be vested with one-half interest in said lot; and that said property should be sold and the net proceeds of the sale divided equally between the parties.

Appellant has appealed from that portion of the decree which vests title in appellee to a one-half interest in Lot 11 and orders its sale. Appellee has cross-appealed from that part of the decree which granted a divorce to appellant and denied appellee's cross-complaint for divorce on the ground of adultery.

We first consider the cross-appeal of appellee. The evidence discloses that when the parties commenced living together in July, 1934, appellant had not obtained a divorce from a former husband. Appellant secured the divorce in 1940 and the parties were then married. They continued to live as husband and wife until December 25, 1947, when their marital relations ceased and appellant and her mother have since resided in one part of the house and appellee in another.

Appellee testified that he saw his wife visit the home of Anderson Brown on the night of December 25, 1947, under circumstances tending to substantiate his charge of adultery. Appellant vigorously denied this testimony and a woman who subsequently married Brown testified that she, and not the appellant, was at Brown's home on the night in question; and that she so informed

appellee the next day when he came to her home and told witness that he and appellant had separated over the incident.

The evidence is also insufficient to show that appellant committed adultery with one Moses Riley. Appellant testified that she was doing laundry work for Riley and her visits to his home were explained as being for the purpose of picking up the clothes and collecting the money for her services. A witness for appellee stated he "just happened to be passing by" when he saw appellant in Riley's house about 9:00 p. m. and saw her leave the house about five o'clock the next morning.

Appellant testified that a few months prior to December, 1947, appellee began staying away from home at nights and to drink to excess; that he cursed and abused her and threatened her life with a pistol. The testimony of appellant was corroborated by that of her mother who had resided with the parties since 1935. She testified that she was fond of her son-in-law and that the parties seemed very happy until appellee started staying out at nights; that appellee's representation to appellant that he was working on these occasions was found to be untrue; that appellee would chase appellant with a pistol and witness advised her daughter to stay away from home "to stop him from fussing and worrying my heart to death." Witness had been nearly blind for two years and stated that appellant had tried hard to please her husband, but they had reached the point where neither could "stand each other."

There was other testimony that in October, 1947, appellee spent evenings in the home and company of a certain woman. Appellee did not deny these visits, but stated that he merely procured whiskey for his friend and a woman who lived with her, and that nothing improper took place.

While the evidence discloses that neither of the parties is without fault, appellee was the first and chief offender in their domestic strife. His accusations of infidelity against appellant appear to have been unjus-

tified and his habitual neglect and cruel treatment of her while devoting his time and attention to other women afford sufficient evidence to support that part of the decree which granted her a divorce.

On the direct appeal appellant insists that the testimony is insufficient to sustain the chancellor's finding that appellee had become vested with a one-half interest in Lot 11, which was ordered sold and the proceeds of the sale divided equally between the parties. On this issue appellee testified that appellant still owed a balance of about $60 on the purchase price of the lot in July, 1934, when the parties commenced living together. He stated that he paid this balance under an oral agreement that appellant would have the property deeded to them jointly when she obtained her divorce and the parties were legally married. A home was constructed on the lot through the joint efforts and funds of appellee, appellant and her mother together with the assistance of neighbors. Construction of the house was begun in 1938 and completed in the latter part of 1940.

Appellant denied that appellee paid any of the purchase price of the lot and her testimony is supported by her deed to the property which was executed March 16, 1934, and recites a consideration of $40 fully paid in cash. She also denied the agreement to transfer the title to the parties jointly. It was also shown that the mother of appellant furnished funds which she received from her deceased husband and also money earned from chopping and picking cotton as her contribution toward the erection of the house. Appellee and appellant were both regularly employed and each contributed money and labor to the project.

In support of the trial court's finding appellee insists that Act 340 of 1947 authorized the dissolution of the estate by the entirety which he asserts was created by the oral agreement between the parties. Since we have concluded that the evidence is insufficient to support the court's finding that appellee became vested with title to a one-half interest in Lot 11, we find it unnecessary to pass on the applicability of said act to an en-

tirety estate alleged to have been created prior to passage of the statute.

In the recent case of Simpson v. Thayer, 214 Ark. 566, 217 S. W. 2d 354, we reaffirmed the rule announced in Harbour v. Harbour, 103 Ark. 273, 146 S. W. 867, where the court said: "It has been frequently held that where the husband purchased and paid for lands, taking the deeds therefor in the name of his wife, the presumption is that his money, thus used, was intended as a gift to her, and the law does not imply a promise or obligation on her part to refund the money or to divide the property purchased or to hold the same in trust for him. His conduct is referable to his affection for her and his duty to protect her against want, and it will be presumed to be a gift and, so far as he is concerned, becomes absolutely her property. Wood v. Wood, 100 Ark. 370, 140 S. W. 275; Womack v. Womack, 73 Ark. 281, 83 S. W. 937, 1136; O'Hair v. O'Hair, 76 Ark. 389, 88 S. W. 945." The proof to overcome this presumption of gift should be clear and convincing. Simpson v. Thayer, supra.

It is also well settled that in order to constitute a resulting trust by reason of the payment of purchase money, the payment must be made at the same time or previous to the purchase and must be a part of the transaction. The oral evidence relied on to establish such trust must be full, free and convincing. Brady v. Timms, 162 Ark. 247, 258 S. W. 338; and McKindley v. Humphrey, 204 Ark. 333, 161 S. W. 2d 962. The husband's subsequent improvements, payment of taxes and insurance are all referable to his "natural desire to manage and care for his wife's property" in the absence of clear and convincing evidence to the contrary. Parks v. Parks, 207 Ark. 720, 182 S. W. 2d 470.

Appellee insists that his contention as to the agreement is supported by the fact that title to Lot 12 was taken jointly after marriage of the parties and construction of the house on Lot 11. There is no evidence of any specific demand by appellee that the alleged 1934 oral agreement be carried out when they purchased Lot 12 or at any other time. Appellee gave the following

testimony as to the alleged agreement: "A. The agreement was when we got the lot paid for, she had to get a divorce to marry me and said she would change·it and have it in our names . . . Q. Now then did she carry out that agreement? A. She didn't change the deed." Appellant denied the agreement and the evidence refutes appellee's statement that the purchase price had not been paid when they commenced living together.

We conclude that the evidence was insufficient to establish the alleged agreement and that the trial court, therefore, erred in vesting title to a one-half interest in Lot 11 in appellee and ordering its sale and division of the proceeds between the parties. The decree is accordingly reversed on direct appeal and the cause remanded with directions to dismiss the cross-complaint of appellee in so far as it affects the title to said lot 11. In all other respects the decree is affirmed.