Bryan E. GLASGOW and Margaret GLASGOW,
His Wife *v.* Faye E. GREENFIELD

CA 82-456                                   657 S.W.2d 578

Court of Appeals of Arkansas
En Banc
Opinion delivered October 5, 1983

*L. D. Gibson,* for appellants.

*Phillip Wells,* for appellee.

MELVIN MAYFIELD, Chief Judge. This is an appeal from a chancery court decree which canceled and rescinded a written contract for the sale of certain described real property

and the improvements, fixtures, and equipment located thereon.

The appellants, Bryan and Margaret Glasgow, owned the property and operated a retail liquor store on it. The sale price was $160,000.00. The appellee, Faye Greenfield, made a down payment of $10,000.00 and agreed to make other payments at specified periods. In addition, appellee purchased the inventory for a cash payment of $4,709.80.

Evidence was introduced to show that the appellee lived in Arizona and made the contract to purchase the property while on vacation in Arkansas. She testified the contract was signed on November 14, 1980, and that appellant Bryan Glasgow said she could get a license to operate the store in about 90 days and could operate on his license until the next June when his license expired. In December, after she had begun to operate the business, she was told by an enforcement officer of the Alcoholic Beverage Control Board that she had to have a license in her own name. She said the enforcement officer called the ABC office and had them send her an application for a license.

The appellee testified that the application arrived in January but it contained a statement that an applicant must be a resident of Arkansas for two years before a license may be obtained. She then contacted Mr. Glasgow and they went to his attorney's office and the attorney suggested they could circumvent the law by forming a corporation with Glasgow serving as president. She told Glasgow and his attorney at that time that she wanted her money back if she could not get a license in her own name. Glasgow tried to lease the building but nothing came of that and in March she moved out and left the keys with an employee who gave them to Glasgow.

Suit was filed by appellee in April, after she had moved out in March. After trial, the chancellor issued a decree canceling and rescinding the contract and granting appellee judgment for the $10,000.00 down payment made by her. The decree contained the following finding of fact:

That the contract was predicated upon mistake of fact and law; that the plaintiff entered into the contract relying upon the representations of defendants that she would have no problems getting her State licenses; that these representations were material and substantial; that plaintiff is neither estopped nor barred by laches; and, plaintiff did not waive her cause of action.

On appeal the appellants first argue that the court erred in rescinding the contract as the alleged misrepresentations were not established by clear, unequivocal, and decisive evidence; they also argue that the misrepresentations alleged to have been made by them were about matters of law, not fact, and that a contract cannot be rescinded for misrepresentations of law.

We think the appellants' argument misses the force of the chancellor's finding that "the contract was predicated upon mistake of fact and law." Appellants cite *Adkins* v. *Hoskins,* 176 Ark. 565, 3 S.W.2d 322 (1928), for the proposition that fraud cannot be predicated upon misrepresentations of matters of law. The court's finding in the instant case, however, is based upon the finding of mutual mistake and appellee cites *Foster* v. *Dierks Lumber and Coal Company,* 175 Ark. 73, 298 S.W. 495 (1927), which states:

It is well settled under the former decisions of this court that equity has jurisdiction to cancel or reform written instruments, either where there is a mutual mistake or where there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the other party . . . .

In appellants' reply brief they do not deny that a contract may be canceled for mutual mistake but argue that there was no mutual mistake in this case. We think otherwise.

Bryan Glasgow admitted that he told appellee she could operate on his license until she got one and that it would take about 60 to 90 days after application for her to do that. This testimony appears on pages 100-102 of the transcript and although there are other places where he seems to

equivocate, the chancellor was free to accept Glasgow's testimony as above indicated. The same is true as to when these statements were made. On pages 92-93 Glasgow makes it very clear that at the very first meeting with appellee, in September before the contract was signed in November, he told her she could operate on his license while her application was pending and that she would have no trouble getting a license. He also admitted that he sold appellee a liquor store and assumed she was going to run it as a liquor store, and both of them testified that they knew that a license was required to operate a liquor store.

It is perfectly obvious from the testimony of both Glasgow and the appellee that they entered into the contract upon the assumption that appellee would be able to obtain a license to operate the liquor store. The chancellor was clearly justified in finding that the contract was predicated upon a mistake and certainly the mistake was mutual. *Foster* also required that proof to cancel a written instrument must be clear, unequivocal and convincing, but it has been explained that "it is not necessary that evidence be undisputed in order to be clear and convincing" and that "it is simply that degree of proof which will produce in the trier of fact a firm conviction as to the allegation sought to be established." *Kelly* v. *Kelly,* 264 Ark. 865, 870, 575 S.W.2d 672 (1979). *See also Ballard* v. *Carroll,* 2 Ark. App. 283, 290, 621 S.W.2d 484 (1981). We think the evidence of mututal mistake is sufficient to support the chancellor's finding.

The question remains, however, whether the mistake was one of law which would have prevented the chancellor from canceling the contract. In the *Adkins* v. *Hoskins* case, cited by appellants, Hoskins told Adkins what property, in his judgment as a lawyer, Adkins' wife would be entitled to receive if they divorced. The court said this was a representation of law, not fact, and held "as a general rule, fraud cannot be predicated upon misrepresentations as to matters of law." This rule is sharply criticized in D. Dobbs, *Handbook on the Law of Remedies* § 11.8 (1975), in these words:

> The rule originated in a mistake of law in 1802, but was widely, even, in the words of Dean Wade, "promis-

cuously" used by courts in the ensuing years. The reasons for it are virtually nonexistent. The usual argument is that everyone ought to know the law, or be presumed to know it. It is of course true that no man ought to escape the charge of murder on the ground that he believed it was permitted by law, and the maxim that one is presumed to know the law has good application in such a case. It can hardly be said to carry any similar weight when the issue is not obedience of law but unjust enrichment arising out of a misunderstanding of it.

Dobbs points out that "perhaps in recognition that the general rule against relief is an unjust one, courts have created several special exceptions to it," and explains one such exception as follows:

> A similar idea, also applicable only in cases where parties have a contract or attempted contract between themselves, is that restitution may be granted for a mistake of law that has led to a failure of the contract's purpose. The Restatement of Restitution illustrates this idea with the case of the landowner who contracts with a builder to erect a building 100 feet high, and makes an initial payment to the builder. Thereafter the landowner discovers that an ordinance prohibits structures over 75 feet high in this locality. According to the Restatement this constitutes a failure of purpose and the landowner is entitled to restitution of payment he has made.

In the early case of *State* v. *Paup*, 13 Ark. 129 (1852), the Arkansas Supreme Court noted that there were cases which made exceptions to the general rule and commented upon one exception in this language:

> So, if both parties should be ignorant of a matter of law, and should enter into a contract for a particular object, the result whereof would, by law, be different from what they mutually intended; here, on account of the surprise, or immediate result of the mistake of both, there can be no great reason why the court should not

interfere in order to prevent the enforcement of the contract, and relieve from the unexpected consequences of it. To refuse, would be to permit one party to take an unconsciencious [sic] advantage of the other, and to derive a benefit from a contract which neither of them intended it should produce. *State* v. *Paup* at 138.

It is apparent that the exception to the mistake of law rule which applies when the mistake leads to a contract's failure of purpose, as explained by Dobbs, is the same exception commented upon in the *State* v. *Paup* case. The actual holding in that case relied upon another exception to the general rule, but the language quoted above clearly and favorably recognized the same well-established exception discussed by Dobbs.

Therefore, while we recognize that the appellant in *Adkins* v. *Hoskins, supra,* could not predicate fraud upon the representations of law made by his wife's attorney, we do not think that is authority for refusing relief to the appellee in the present case where there was a mutual mistake which prevented appellee from operating the liquor store and which resulted in an unexpected failure of the reason and purpose of the contract.

In their reply brief, the appellants argue that the appellee did not allege mistake with the particularity required by Civil Procedure Rule 9 (b). Trial briefs were filed in this case and are in the record. The appellee's brief cites the *Paup* case and states that it holds that a contract entered into under a material misconception of legal rights may be rescinded as a contract founded in mistake of fact. This issue was therefore before the trial court and no objection was made to it there. It cannot be objected to here for the first time. *Ferguson* v. *City of Mountain Pine,* 278 Ark. 575, 647 S.W.2d 460 (1983).

Appellants also argue that the trial court erred in not holding against the appellee on the basis of waiver and estoppel. They cite *Herrick* v. *Robinson,* 267 Ark. 576, 595 S.W.2d 637 (1980), which holds that one who wants to rescind must, as soon as he learns the truth, announce his

purpose, "adhere to it, and act with reasonable diligence, so that all parties may be restored to their original position as nearly as possible." It is the appellants' contention that the appellee waited over three months after becoming aware of the two-year residency requirement before making any attempt to rescind the contract.

*Herrick* holds that the issue of timely rescission is one of fact, 267 Ark. at 587, and the supplemental opinion on rehearing again makes that clear, 267 Ark. at 592-B. Here the appellee testified she found out about the residency requirement in January and after contacting Glasgow and going with him to his attorney's office where she advised them she wanted her money back if a license could not be issued in her name, she waited while Glasgow attempted to lease the building and she finally moved out sometime in March. We cannot say that the chancellor's decision on the question of a timely rescission is clearly erroneous. Civil Procedure Rule 52 (a).

Furthermore, the point involved in the requirement of a timely rescission is the opportunity for the parties to be restored to their original position. According to the appellee, after being told that she wanted her money back, Glasgow tried to lease the building but did not avail himself of the opportunity to take the store back. Secondly, Glasgow admitted he knew the appellee was going to close the store about a week before it was closed and he testified that even after it was closed he did not open it up again, and that he surrendered his license because the ABC Board told him they wanted the store open or his license would be revoked. Finally, appellants seem to complain that the appellee took the inventory with her instead of turning it over to them. It must be remembered, however, that the appellee paid cash for the inventory and it therefore belonged to her. There is certainly nothing in the record to indicate that appellants offered — or even wanted — to pay for the inventory that was left and take it back. The money judgment against them is for the down payment only. Appellee did not seek to recover the money she paid for the inventory.

Having carefully considered the appellants' contentions, we affirm the chancellor's decree.

GLAZE and COOPER, JJ., dissent.

TOM GLAZE, Judge, dissenting. I respectfully dissent. Primarily, I part with the majority because, in my opinion, rescission is inapplicable to the facts in this case. Appellee continued operation of the liquor business three months after she learned it could not be licensed in her name. During that period, the ABC enforcement officer urged appellee to apply for a license. Although he opined appellee could not obtain a license in her name, the officer testified that she could have obtained one by incorporating the business, and appointing a manager. Appellee made no efforts to acquire a license and her inaction not only resulted in a heated discussion between her and the ABC officer, but also led to a scheduled hearing of the ABC Board to cancel appellant's license. Appellant subsequently surrendered his license to the Board.

As stated in *Herrick* v. *Robinson*, 267 Ark. 576, 595 S.W.2d 637 (1980), a condition precedent to an effective rescission requires that the party rescinding must restore, or offer to restore, the opposite party to his former position. Here, appellee made no attempt to license the business during the months she operated it. In failing to act, she also placed appellant's license in jeopardy. Obviously, a liquor store without a license has little value. By the time she elected to close the business, the appellee could in no way restore appellant to the position he was in when they entered their agreement. Permitting appellee to rescind on these facts — particularly when it appears she could have obtained a license — I believe is error.

COOPER, J., joins in this dissent.