Mary R. LOFTON *v.* Floyd J. LOFTON

CA 87-242                                    745 S.W.2d 635

Court of Appeals of Arkansas
En Banc
Opinion delivered March 2, 1988

*Jerry Cavaneau,* for appellant.

*House, Wallace & Jewell, P.A.,* by: *Philip E. Dixon* and

*Mark F. Hampton*, for appellee.

MELVIN MAYFIELD, Judge. Appellant, Mary Lofton, was awarded an uncontested divorce from appellee, Floyd Lofton. She appeals the chancellor's decision regarding the division of certain personal property and his failure to award alimony.

The parties were married in Texas in 1960. At the time of the divorce, they had been married twenty-four years and had two grown daughters. Appellant was a school teacher and had worked during the marriage for all but about six years when the children were small. The appellee attended law school at night during the marriage and at the present time is a circuit judge.

In support of the argument that she deserved an award of alimony, appellant cites *Boyles* v. *Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980), in which the Arkansas Supreme Court stated certain factors to be considered when setting alimony. The appellant applies these factors to her case and concludes the chancellor erred in failing to award alimony.

■ The award of alimony in a divorce action is not mandatory, but is a question which addresses itself to the sound discretion of the chancellor, *Bohannon* v. *Bohannon*, 12 Ark. App. 296, 675 S.W.2d 850 (1984), and the chancellor's decision will not be disturbed absent a clear abuse of that discretion, *Neal* v. *Neal*, 258 Ark. 338, 524 S.W.2d 460 (1975); *Weathers* v. *Weathers*, 9 Ark. App. 300, 658 S.W.2d 427 (1983). Without any discussion of the details of the evidence, we simply state that we do not find the chancellor's decision with respect to alimony to be a clear abuse of his discretion.

Appellant also argues that the chancellor erred in holding that a portion of the funds evidenced by two jointly held certificates of deposit was the separate property of appellee. As a result of his father's death, appellee and his brother each inherited one-half interest in a house. Appellee bought his brother's interest with approximately $5,000.00 in marital funds. Subsequently, appellee sold the house for $25,000.00, added another $5,000.00 in marital funds to that amount and purchased two $15,000.00 certificates of deposit in the names of Floyd and Mary Lofton. The interest earned by one of the certificates of deposit went into a joint checking account and the interest of the

other went into a joint savings account.

The chancellor held that because marital funds had been used to purchase the brother's half interest in the house, $12,500.00 of the proceeds of the sale of the house was marital property. However, he held the other $12,500.00 to be appellee's separate property by inheritance. Appellant contends that the appellee, by placing the proceeds from the sale of the house into certificates of deposit bearing both her name and appellee's name, converted the property to a tenancy by the entirety and that, under Ark. Stat. Ann. § 34-1215 (Supp. 1985), it must be divided equally. The appellee, however, says that the principal amounts of the certificates of deposit were never utilized by either party during the marriage and argues that he did not intend to make a gift of the inherited funds to his wife.

In *Ramsey* v. *Ramsey*, 259 Ark. 16, 531 S.W.2d 28 (1975), the Arkansas Supreme Court discussed tenancy by the entirety property as follows:

> We have long recognized that there may be a tenancy by the entirety in personal property, including choses in action. . . .

> The acquisition of property, whether realty or personalty, by persons who are husband and wife by an instrument running to them conjunctively, without specification of the manner in which they take, usually results in a tenancy by the entirety. . . . There is at least a presumption that the taking in such circumstances is by the entirety. . . . The fact that the consideration given for the property taken in the two names belonged to the husband only is of little, if any, significance where he is responsible for the property being taken in both names as the presumption is that there was a gift of an interest by the husband to the wife, even though the wife may have no knowledge of the transaction . . . .

> . . . .

> The presumption is strong, and it can be overcome only by clear, positive, unequivocal, unmistakable, strong, and convincing evidence, partially because the alternative is a resulting trust the establishment of which, under such

circumstances, requires that degree of proof. . . . [Citations omitted.]

259 Ark. at 19-20.

■ We pause at this point to note that the words "positive," "unequivocal," and "unmistakable" were used in *Ramsey* to describe the standard of evidence which had to be met in order to overcome the rebuttable presumption that arises when property is taken in the names of both husband and wife. We also note, however, that these words were taken from cases in other states. The Arkansas cases cited in *Ramsey* express the standard in terms of evidence that is "clear and convincing," *Simpson* v. *Thayer*, 214 Ark. 566, 217 S.W.2d 354 (1949), citing *Parks* v. *Parks*, 207 Ark. 720, 182 S.W.2d 470 (1944), and evidence that is "clear, satisfactory and convincing," *Hubbard* v. *McMahon*, 117 Ark. 563, 576, 176 S.W. 122 (1915). And in a case decided after *Ramsey*, the court said that clear and convincing evidence is evidence by a credible witness whose memory of the facts about which he testifies is distinct, whose narration of the details thereof is exact and in due order, and whose testimony is so clear, direct, weighty, and convincing as to enable the fact finder to come to a clear conviction, without hesitance, of the truth of the facts related; the court concluded: "It is simply that degree of proof which will produce in the trier of fact a firm conviction as to the allegation sought to be established." *Kelly* v. *Kelly*, 264 Ark. 865, 870, 575 S.W.2d 672 (1979). *See also Glasgow* v. *Greenfield*, 9 Ark. App. 224, 228, 657 S.W.2d 578 (1983). It is, therefore, our opinion that the addition of the other adjectives in *Ramsey* does not raise the required quantum of proof beyond that set out in *Kelly* and *Glasgow*.

We relied upon *Ramsey* and its presumption in *Warren* v. *Warren*, 11 Ark. App. 58, 665 S.W.2d 909 (1984), in holding that real property purchased as husband and wife was tenancy-by-the-entirety property and had to be dissolved according to Ark. Stat. Ann. § 34-1215 (Supp. 1983). We again relied on *Ramsey* and the presumption in *Lyle* v. *Lyle*, 15 Ark. App. 202, 691 S.W.2d 188 (1985), when we held that the chancellor erred in crediting each spouse with that portion of nonmarital funds contributed by each toward the down payment on forty acres deeded to them as tenants by the entirety. We stated: "In such a

situation, there arises a presumption of a gift from the party furnishing the consideration. . . . Although this presumption is rebuttable, it is a strong one." 15 Ark. App. at 204. It is also clear that an estate by the entirety may be created in personal property. *Ramsey, supra; Black* v. *Black*, 199 Ark. 609, 135 S.W.2d 837 (1940); *Union & Mercantile Trust Co.* v. *Hudson*, 147 Ark. 7, 227 S.W. 1 (1921).

One of the questions involved in *Black* v. *Black, supra*, was whether Mr. Black, by changing a bank checking account from his individual name to the names of "Mr. and Mrs. W. G. Black," had created an estate by the entirety in the bank deposit. The appellate court said the question depended upon Mr. Black's intention in opening and carrying his checking account in the names of himself and his wife and affirmed the trial court's holding that an estate by the entirety had been created. The court also said that this estate would have continued only in so much of the account as had not been withdrawn by one spouse or the other. However, the court relied upon *Dickson* v. *Jonesboro Trust Co.*, 154 Ark. 155, 242 S.W. 57 (1922), for this statement, and in discussing *Dickson*, the court in *Black* said that the husband in *Dickson* had withdrawn portions of the deposit "with the wife's consent." We think that *Black* and *McEntire* v. *McEntire*, 267 Ark. 169, 590 S.W.2d 241 (1979), both stand for the proposition that neither spouse can destroy the estate by the entirety without the other's consent, although as far as the bank is concerned payment to either relieves the bank of liability. *See also Union & Mercantile Trust Co.* v. *Hudson, supra*, for the rule that withdrawal of the funds by one tenant does not mean that tenant thereby acquires sole ownership as against the other.

While the withdrawal of the funds by one spouse without the consent of the other is not involved in the present case, we think it important to note that the winner of the race to the bank does not determine ownership of the money withdrawn except in so far as the bank's liability is concerned. This is made clear by *McGuire* v. *Benton*, 232 Ark. 1008, 342 S.W.2d 77 (1961), where the trial court held that all the money originally in a joint savings account was estate-by-the-entirety property even though the wife had withdrawn most of it by the time of the final hearing in the case. As stated, this issue is not before us in the present case but we do have to decide whether the trial court was correct in holding that

$12,500.00 of the money represented by the certificates of deposit belonged to the appellee as his separate property.

The ownership of property obviously depends upon the facts in each case. The rationale involved has not always been the same but a careful reading of our cases discloses that under the facts they have been decided correctly and in accordance with the above case law. For example, in *Hayse* v. *Hayse*, 4 Ark. App. 160-B, 630 S.W.2d 48 (1982), we held that the chancellor correctly found that the wife had not destroyed the nonmarital status of her inheritance. In that case she had purchased a money-market certificate in both her name and that of her husband "so if he ever needed to borrow money he would have collateral." However, when the certificate matured, and before any marital difficulties arose, she transferred the funds to another account held in her name and that of her daughter. At trial her husband testified that he was aware of his wife's inheritance and that they had discussed the purchase of the money-market certificate. However, he said he never saw the certificate and that he never claimed any ownership in it until the time of the divorce. In *McDonald* v. *McDonald*, 19 Ark. App. 75, 716 S.W.2d 788 (1986), we said Ark. Stat. Ann. § 67-552(C) (Supp. 1985) provides that "if a certificate of deposit is in the names of persons who denominate themselves to the banking institution as husband and wife, then such certificate of deposit and all additions thereto shall be the property of such persons as tenants by the entirety." There was, however, no evidence mentioned that could have overcome the presumption that the certificate issued in both names created a tenancy by the entirety, and the statute, as we have already pointed out, was enacted for the protection of the bank in which the deposit was made and governs only the bank's relationship with its depositor. Thus, the result in *McDonald* does not conflict with the presumption relied upon in *Ramsey*.

The basic point involved is whether the spouse claiming the money must prove that separate property placed in the spouses' joint names constitutes a gift or whether there is a presumption that the property is owned by them as tenants by the entirety.

In this regard, the case of *McEntire* v. *McEntire, supra,* may appear to conflict with *Ramsey*. That case was decided by a court with two special judges and a majority of the regular members of

the court dissented or did not participate. Moreover, we think later cases decided by the Arkansas Supreme Court are more compatible with the presumption rule of *Ramsey* than with the decision in *McEntire*. See, for example, the case of *Canady* v. *Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986), where the court stated:

> As to the 20-acre tract, it was purchased during the marriage with Connie's premarital funds, but the deed conveyed the property to James and Connie as husband and wife. We have held that our marital-property law does not apply to tenancies by the entirety. *Warren* v. *Warren*, 273 Ark. 528, 623 S.W.2d 813 (1981).

290 Ark. at 553. Furthermore, *McEntire* relies upon *Porterfield* v. *Porterfield*, 253 Ark. 1073, 491 S.W.2d 48 (1973), and *Coristo* v. *Twin City Bank*, 257 Ark. 554, 520 S.W.2d 218 (1975), but neither of those cases involved the issue of whether an account or certificate of deposit in the names of a husband and wife created a presumption of tenancy by the entirety. Those cases were concerned with accounts or certificates in the names of persons who were not husband and wife. The presumption of tenancy by the entirety only applies where the account or certificate is in the names of a husband and wife.

A dissenting opinion in the present case takes the view that a presumption of gift properly arises when one spouse causes a deed to land to be made in the names of both spouses and that this presumption was reasonably extended to apply to promissory notes in *Ramsey* but should not arise when one spouse deposits separate funds in a joint bank account. We perceive no valid reason for singling out joint bank accounts for a different rule of law. To the contrary, what is needed is a constant rule to be applied to all these cases. Experience teaches us that when parties become involved in a divorce suit the division of their property becomes a major issue. The presumption rule set out in *Ramsey* seems to us to be a helpful and proper starting place in these cases where the intent of the parties must be determined from evidence given after the marriage has failed and intent is being retroactively determined.

In summary, we hold that once property, whether personal or real, is placed in the names of persons who are

husband and wife, without specifying the manner in which they take, there is a presumption that they own the property as tenants by the entirety and it takes clear and convincing evidence to overcome that presumption. In the present case, both marital funds and the appellee's separate funds were used to purchase two certificates of deposit which were taken in the names of both parties. The interest earned on the certificates was deposited in the parties' joint checking and joint savings accounts. The only evidence that any of the funds evidenced by the certificates were intended to be the appellee's separate property was his statement that he did not concede that the certificates were marital property. We hold there is no clear and convincing evidence to overcome the presumption that the certificates were owned by the parties as tenants by the entirety. Therefore, the chancellor's finding that $12,500.00 of the funds evidenced by the certificates belongs to appellee as his separate property is clearly erroneous and the judgment is modified to reflect that the certificates of deposit are owned by the parties as tenants by the entirety and are to be divided equally.

Affirmed as modified.

CORBIN, C.J., concurs.

JENNINGS, J., dissents.

COULSON, J., not participating.

DONALD L. CORBIN, Chief Judge, concurring. I am sympathetic to Judge John Jennings' dissent, as I believe it is more reflective of how the general public would view such situations. While I don't have any reliable statistics available, my own best guess would be that 99% of our Arkansas citizens would favor Judge Jennings' position. I suspect that in all but a few cases there is no intent to make an absolute gift of one-half interest where one spouse deposits inherited funds into a joint account. It is typically done as a matter of convenience with the only legal consideration being the avoidance of probate. I find it hard to believe that the donor, and for that matter, the donee, ever consider the ownership as being anything other than in the spouse who inherited the money in the first place. However, I am constrained to follow the majority as I believe it is the more correct of the two positions under prior cases.

I write separately only to point out that despite the somewhat confusing manner in which past cases have been decided, our decision in the present case expressly recognizes the viability of the rebuttable presumption doctrine as it relates to property held in the names of husband and wife. We also recognize that the standard required to rebut the presumption is quite burdensome. For this reason, I feel that the majority opinion clearly charges a spouse, who causes non-marital property to be taken in the joint names of the spouses, with constructive knowledge that upon divorce such property will be divided equally pursuant to Arkansas Statutes Annotated § 34-1215 (Supp. 1985). The only exceptions to such division exist where the donor spouse produces evidence which is so clear, direct, weighty and convincing that the chancellor, without hesitation, can determine that no gift to the donee spouse was intended or that the donor spouse was fraudulently induced to cause the property to be taken in joint names. I note that the majority opinion effectively overrules the language in *Hayse* v. *Hayse*, 4 Ark. App. 160-B, 630 S.W.2d 48 (1982) derived from the supreme court decision of *McEntire* v. *Estate of McEntire*, 267 Ark. 169, 590 S.W.2d 241 (1979), placing the burden on the donee to prove that a gift was made.

I am convinced that the presumption applies equally to real and personal property. Because the standard to rebut is so burdensome, I am of the opinion that the clearest and most convincing evidence that can be presented in rebuttal of the presumption may be antecedent or contemporaneous declarations tending to prove that the intention was not to make a gift. *See Hubbard* v. *McMahon*, 117 Ark. 563, 176 S.W. 122 (1915).

Because of the confusion generated by the prior decisions in this area, I would also invite the supreme court to review our decision in an effort to clarify the state of the law.

JOHN E. JENNINGS, Judge, dissenting. I respectfully dissent. The view I take of the case necessarily requires statutory interpretation, which would suggest that this case should perhaps have been certified to the supreme court. I am persuaded that chancery courts in this state have always had the power to equitably divide the joint bank accounts of spouses in divorce and that Ark. Stat. Ann. § 34-1215 was not intended to restrict this power. The statute was enacted as Act 340 of 1947:

> Courts of equity, designated Chancery Courts within the State of Arkansas, shall have the power to dissolve estates by the entirety or survivorship, in real or personal property, upon the rendition of a final decree of divorcement, and in the division and partition of said property, so held by said parties, shall treat the parties as tenants in common.

The statute was amended by Act 457 of 1975 to provide that dissolution was automatic if the divorce decree was silent.

The reason for the statute was that the supreme court had held in a line of cases beginning with *Roulston* v. *Hall*, 66 Ark. 305, 50 S.W. 690 (1899), that chancery courts had no power to dissolve an estate by the entireties in a divorce. *Warren* v. *Warren*, 273 Ark. 528, 623 S.W.2d 813 (1981); *Jenkins* v. *Jenkins*, 219 Ark. 219, 242 S.W.2d 124 (1951); *James* v. *James*, 215 Ark. 509, 221 S.W.2d 766 (1949); *Ward* v. *Ward*, 186 Ark. 196, 53 S.W.2d 8 (1932); *Heinrich* v. *Heinrich*, 177 Ark. 250, 6 S.W.2d 21 (1928); *Davies* v. *Johnson*, 124 Ark. 390, 187 S.W. 323 (1916). Chief Justice McCulloch stated the reason for the rule in *Davies* v. *Johnson, supra*:

> In *Branch* v. *Pope*, 61 Ark. 388, the rule was laid down that under a deed to husband and wife "the entire estate is vested in each of the tenants by the entireties, for they hold, not by moities, but by entireties" that, in fact, conforms precisely to the common law definition of an estate by the entirety. If the entire estate is vested at the time of the conveyance in each of the tenants, how could it be divested merely by the granting of a divorce in the absence of a statute authorizing it to be done? Suppose one of the parties executes a deed to a third party during the coverture, purporting to convey the whole estate, the deed would convey all of the vested interest of the grantor, including the rights resulting from survivorship, and it would be an anomalous situation to hold that such a vested interest could be divested by divorce of the parties.

124 Ark. at 393, 187 S.W. at 324.

The *Davies* court also relied on *Roulston*:

> Where land is conveyed to husband and wife, they do not take by moities, but both are seized of the entirety—the

whole in contradistinction to a moiety or part only. . . . Neither tenant by entirety can convey his or her interest so as to affect the right of survivorship in the other. [Citations omitted.]

124 Ark. at 394, 187 S.W. at 324.

In *Heinrich, supra*, the court said:

An estate by entirety, either legal or equitable, cannot be divested out of the husband and invested in the wife, or vice versa, by the courts. The right to the whole estate by the survivor prevents this. [Citing *Roulston.*]

In *Jenkins* v. *Jenkins*, 219 Ark. 219, 242 S.W.2d 124 (1951), the court recognized that a majority of jurisdictions hold that divorce dissolves the entirety estate but that its holding to the contrary had become a rule of property in this state. This principle, *i.e.*, that a common law tenancy by the entirety cannot be affected by a decree of a court of equity, apart from specific statutory authorization, remains the law in this state and is still recognized as a rule of property. *Warren* v. *Warren*, 273 Ark. 528, 623 S.W.2d 813 (1981).

It was against this background that the general assembly enacted § 34-1215. The emergency clause of the original act (Act 340 of 1947) provided:

The General Assembly of the State of Arkansas finds and declares that numerous injustices have been done because *Courts of Equity* within the State of Arkansas *have lacked the power* heretofore, upon dissolutionment of the marital status, *to dissolve estates in property created by the marital status*; and that, accordingly, an emergency is hereby declared to exist. . . . [Emphasis added.]

It seems clear then that the rule holding that chancery lacked authority to dissolve a tenancy by the entirety derives from the perceived nature of that tenancy at common law. Essential to that nature is the concept that neither tenant can convey his or her interest so as to affect the right of survivorship in the other. *Roulston, supra*. As the *Davies* court said, this is a "vested interest" and therefore cannot be divested by the court.

This rule, however, has no application to a tenancy by the

entirety in a bank account or certificate of deposit. The majority is quite correct that an estate by the entirety may be created in personal property in this state. *Jordan* v. *Jordan*, 217 Ark. 30, 228 S.W.2d 636 (1950); *Union & Mercantile Trust Co.* v. *Hudson*, 147 Ark. 7, 227 S.W. 1 (1921). It has also been specifically held that a husband and wife may hold title to bank deposits as tenants by the entirety. *Black* v. *Black*, 199 Ark. 609, 135 S.W.2d 837 (1940). This is a matter of common law—it is not the result of statutes governing the relationship between the bank and its depositors, such as Ark. Stat. Ann. § 67-552 (Supp. 1985). *Ratliff* v. *Ratliff, Adm'x*, 237 Ark. 191, 372 S.W.2d 216 (1963); *Black* v. *Black, supra; Hayse* v. *Hayse*, 4 Ark. App. 160-B, 630 S.W.2d 48 (1982).

Although spouses may hold title to funds in a bank account as tenants by the entirety for some purposes, this is not a true common law tenancy by the entirety. The distinction was explained in *McGuire* v. *Benton State Bank*, 232 Ark. 1008, 342 S.W.2d 77 (1961):

> A joint bank account such as this one has been held to constitute an estate by the entirety in the sense that upon the death of either spouse the title passes to the survivor. . . . But while both spouses are alive the estate is not a true common-law tenancy by the entirety, for, as we observed in the cases cited, either of the owners may extinguish the joint estate as to any part of the money that is withdrawn from the account and reduced to separate possession. Hence in a case like this one the intention of the parties and all other pertinent circumstances must be considered in determining the question of ownership.

*See also Black* v. *Black, supra; Dixon* v. *Jonesboro Trust Co.*, 154 Ark. 155, 242 S.W. 57 (1922).

In *Davis* v. *Jackson*, 232 Ark. 953, 341 S.W.2d 62 (1961), Mr. Davis, a widower, deposited $10,000.00 in a savings and loan and received a certificate of deposit issued in his name "or" his granddaughter's. After he remarried he had the certificate changed to remove his granddaughter's name and to insert his new wife's name. The court held that the granddaughter had no vested interest in the property. Although this was a joint tenancy rather than a tenancy by the entirety, the principle is the same.

Because tenancies by the entirety in bank deposits may be destroyed by the unilateral act of either tenant and create no vested interest in the other, equity has always had the power to divide them in divorce, apart from statute. The reasons for the rule announced in *Davies* v. *Johnson* do not exist here. Clearly, in passing Ark. Stat. Ann. § 34-1215, the legislature intended to grant certain powers to chancery courts which had not existed before. Certainly the legislature did not intend to restrict the pre-existing authority of chancery courts. Section 34-1215 was intended to apply only to those true common law tenancies by the entirety and joint tenancies with right of survivorship which the court had previously held chancery was without power to dissolve. It is significant that in the forty years since the passage of § 34-1215, the supreme court has never held it applicable to joint bank accounts.

In deciding *Warren* v. *Warren, supra*, the supreme court gave due consideration to policy:

> There is also an apparent consideration of public policy by the General Assembly, and that is the recognition that there ought to be reckonability in the law. When a husband and wife cause a marital survivorship instrument to be created they ought to know that if they remain married the survivor will own the property, and they ought to know that if they divorce the property will be divided equally, and they ought to know that they will not be subjected to the eight variables of the 1979 act.

273 Ark. at 533, 623 S.W.2d at 816.

These policy considerations are quite valid if we are discussing the preparation of a marital survivorship instrument such as a deed. They are considerably less relevant to the situation where one spouse deposits separate funds in a joint account. It follows that such accounts are divisible by chancery courts in divorce under the provisions of Ark. Stat. Ann. § 34-1214, our divorce property division statute.

We are also faced with the question of whether the establishment of a bank account in both spouses' names creates a presumption of gift when the account is funded, in whole or in part, with one spouse's separate funds. In *Ramsey* v. *Ramsey*, 259

Ark. 16, 531 S.W.2d 28 (1975), the husband sold cattle and equipment and in return took promissory notes payable to the husband and wife. In divorce, he contended that the cattle and equipment had been his separate property and that the note had been made payable to both spouses by mistake. The *Ramsey* court said that when real or personal property is acquired by husband and wife, by an instrument running to them conjunctively, a presumption arises that the taking is as tenants by the entirety, and that if the property is acquired by one party's separate funds there is a presumption of gift. The court in *Ramsey* held that the parties held the note as tenants by the entirety and also that it was subject to division under Ark. Stat. Ann. § 34-1215.

The decision in *Ramsey* was based, at least in part, on earlier supreme court cases involving a deed to land. For instance, in *Harrison* v. *Knott*, 219 Ark. 565, 243 S.W.2d 642 (1951), cited in *Ramsey*, the court held that where a husband purchases land and procures the deed to be made to his wife, the presumption is that he intended it as a gift, and a trust does not result in his favor. *See also Carpenter* v. *Gibson*, 104 Ark. 32, 148 S.W. 508 (1912). The presumption of gift arising when one spouse causes a deed to land to be made out in the names of both spouses is grounded in both reason and policy. Perhaps it is probable that ordinarily a gift is intended, and there are strong policy considerations favoring relative certainty in the law of title to real estate. This rule was reasonably extended in *Ramsey* to apply to a promissory note, taken in the names of both spouses. But neither reason nor policy support the application of such a presumption when one spouse deposits separate funds in a joint account. Such deposits may be made for many reasons. The joint account may be intended to serve as a will substitute. *See, e.g., Ratliff* v. *Ratliff*, 237 Ark. at 195, 372 S.W.2d at 218. The purpose may be merely to accommodate the other spouse in some way, for instance, to permit him to use the funds as collateral for a loan. *See, e.g., Hayse* v. *Hayse*, 4 Ark. App. 160-B, 630 S.W.2d 48 (1982). A gift may be intended, or the deposit may be made because there is no other account available.

The supreme court held, in effect, that such a presumption of gift did not apply to the establishment of a bank account in both spouses' names in *McEntire* v. *McEntire*, 267 Ark. 169, 590

S.W.2d 241 (1979). In that case Mr. McEntire established a joint account with his wife and both parties withdrew funds from the account from time to time. Two years later McEntire had a new signature card issued, withdrawing Mrs. McEntire's authority to draw on the account. At his death she argued that funds were hers as the surviving tenant by the entirety. The court affirmed the trial court's grant of summary judgment, stating:

> An estate by the entireties in a bank account differs in one significant aspect from an estate in real property in that the estate exists in the account only until one of the tenants withdraws such funds or dies leaving a balance in the account. Funds withdrawn or otherwise diverted from the account by one of the tenants and reduced to that tenant's separate possession ceases to be a part of the estate by the entireties.

A dissenting opinion in *McEntire* argued that *Ramsey v. Ramsey* controlled. It argued that there was a presumption that the parties held as tenants by the entirety and that there was a presumption of gift. This argument was impliedly rejected by a majority of the court.

We relied on *McEntire* in *Hayse v. Hayse, supra.* There the wife had inherited money from her father and bought a certificate of deposit in the name of husband or wife. She testified that she had taken the certificate out in both names so if her husband needed to borrow money he would have collateral. The husband contributed nothing to the purchase money and never made any claim to it during the marriage. She retained possession of the certificate. The trial court awarded the certificate of deposit to the wife upon divorce, and the husband appealed. We held that the wife's inheritance would not be subject to equal division in the divorce unless by some action she had destroyed its status as non-marital property by creating an interest therein in her husband. We held that the burden was upon the husband to prove a gift and that, on the facts presented, the chancellor was not wrong in finding that a gift had not been intended. We recognized that the property was divisible under Ark. Stat. Ann. § 34-1214 and made no mention of § 34-1215.

*Ramsey* was decided before *Potter v. Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983). In that case the court said that separate

funds remain separate unless it became impossible to trace the source of the funds. "This is true even if separate funds were commingled with other funds in a common account." 280 Ark. at 46, 655 S.W.2d at 387. The court also said that property acquired for a consideration paid in part out of community funds and in part out of separate funds of one of the spouses is in part community and in part separate property.

In *Gorchik* v. *Gorchik*, 10 Ark. App. 331, 663 S.W.2d 941 (1984), we followed *Hayse*, but in *Gorchik* we held that the husband had destroyed the status of his separate property because both spouses had utilized his inherited funds, deposited in a joint account, during the course of their marriage. In other words, the parties had treated the property as marital property.

In *McDonald* v. *McDonald*, 19 Ark. App. 75, 716 S.W.2d 788 (1986), we held that a certificate of deposit titled in the name of husband or wife was tenancy by the entirety property and was required to be divided under Ark. Stat. Ann. § 34-1215. We did not mention *Hayse* v. *Hayse* or *Gorchik* v. *Gorchik*. We thought *Warren* v. *Warren* controlled. I would overrule *McDonald*.

To summarize, it is my view that money held by spouses in a joint account is subject to division in divorce under Ark. Stat. Ann. § 34-1214. If the account contains what were the separate funds of one spouse and the amount of the separate funds can be ascertained, this money may be returned, in equity, to the spouse who contributed it. If the other spouse claims that a gift has been made, he has the burden of proving it. This is largely a matter of intent. *McGuire* v. *Benton State Bank*, 232 Ark. 1008, 342 S.W.2d 77 (1961); *Neal* v. *Neal*, 194 Ark. 226, 106 S.W.2d 595 (1937). We have said his burden of proof is by clear and convincing evidence. *Hayse* v. *Hayse, supra*. This measure of proof lies somewhere between a preponderance of the evidence and proof beyond a reasonable doubt. *Kelly* v. *Kelly*, 264 Ark. 865, 575 S.W.2d 672 (1979).

Here, the certificate of deposit was purchased in part from marital funds and in part from separate funds. The fact that appellee had the certificate made out in both names is some evidence of a gift. The marital relation, in itself, is a factor which makes a gift more likely. However appellee testified that he claimed the inherited funds as separate property and there was no

testimony that a gift was intended. The fact that the appellant did not make use of the principal funds held on deposit is relevant. *See Hayse v. Hayse* and *Gorchik v. Gorchik*. The money was recently inherited and clearly traceable. The chancellor's implied finding that no gift was intended is not clearly erroneous.